## POTTER v. FOSTER.

Eastern Section. January 23, 1932.

Petition for Certiorari denied by Supreme Court, December 17, 1932.

E. G. Foster, of Huntsville, and Kennerly & Key, of Knoxville, for appellant.

Howard H. Baker, of Huntsville, for appellee.

PORTRUM, J.  This contest is to determine which one of two sureties has successfully subjected to his debt the property of the common debtor.  Jasper Jeffers, the common debtor, owned a one-half interest in a sawmill, and Judge W. H. Potter, the defendant and appellee in this action, acquired the possession and his title to the Jeffers interest in this sawmill by an execution sale upon a magistrate's judgment.  The complainant and appellant, E. J. Foster, asserts title to Jeffers' one-half interest in this mill, under a decree of the chancery court vesting and confirming the title in him as acquired at a master's sale, made under an order of sale entered in the cause of First National Bank of Huntsville v. Jasper Jeffers, Jr., and Others, No. 1980.  Foster asserts title only to Jeffers' interest, which was a one-half interest in this mill, and concedes that Judge Potter owns the other half; but Judge Potter insists that he is the owner of the entire mill, having acquired Jeffers' interest under the execution sale referred to.

Mr. Foster filed the bill in this cause in the nature of the bill in detinue, to establish his title in the Jeffers' interest in the sawmill, and asked that it be sold and the proceeds divided between him and Judge Potter. The bill alleges:

"That on December 4, 1923, Jasper Jeffers, Jr., made a note to the First National Bank of Huntsville, Tennessee, ninety days after date, for $400, and put up as collateral security one sawmill and one pair of mules, said note was signed by Jasper Jeffers, Jr., and by your complainant as security and purported to be signed by F. V. Hamon, but said note was not paid, and on, to-wit; May 16, 1924, the First National Bank of Huntsville, Tennessee, filed an original bill against Jasper Jeffers, Jr., E. J. Foster, and F. V. Hamon, on said note, setting out verbatim in the bill, and filing the note as Exhibit A to the original bill, which note is attached to the back of the original bill in said cause of First National Bank of Huntsville v. Jasper Jeffers, Jr., et al., No. 1980, and thereafter on June 4, 1924, F. V. Hamon filed a plea of non est factum as to said note in said cause, and thereafter and on to-wit: February 19, 1926, the original bill was dismissed as to the defendant F. V. Hamon; judgment pro confesso taken against the defendant, Jasper Jeffers, Jr., and E. J. Foster, and a final decree entered upon said original bill and exhibit, and judgment pro confesso for the sum of $491.30. The decree further showing that in said cause, No. 1988, styled W. H. Potter v. F. V. Hamon et al., there was a decree directing a sale of one-half interest in the sawmill, which was put up as collateral on the note sued on in this cause, which one-half interest belonged to F. V. Hamon, and the bill being dismissed as to F. V. Hamon on the plea of non est factum, the decree only gave a lien on the one-half interest of the sawmill of Jasper Jeffers, Jr., herein sued on, and provided that the lien extend from the date of the note of December 4, 1923, and directing the sale of the one-half interest unless the judgment is paid within thirty days, the judgment not being paid, on March 23, 1926, the one-half interest in said mill belonging to Jasper Jeffers, Jr., was sold by order of the Chancery Court when the complainant, E. J. Foster, became the purchaser thereon, and upon the purchase of the one-half interest in said mill and on to-wit: April 10, 1926, upon proper notice for a chambers decree, the sale to your complainant for the one-half interest in said mill was confirmed by this Honorable Court, all of which fully appears from cause No. 1980, styled The First National Bank of Huntsville v. Jasper Jeffers, Jr., et al., which is called for as an Exhibit to this bill, but need not be copied in the issuance of process

"Complainant further shows to the court that since his purchase of the one-half interest in said mill that W. H. Potter has refused to recognize him as the owner thereof, or turn over his interest therein, and that since the defendant, W. H. Potter, has one-half

interest in said mill and has declined to recognize or turn over to your complainant his one-half interest in said mill, it is necessary for your complainant to come into this court and have said mill sold as a partnership mill, or as a mill owned one-half by W. H. Potter and one-half by your complainant E. J. Foster, and after the sale of the property and the payment of the cost, the remainder to be divided equally between the complainant and the defendant as their interests appear in said mill.

Complainant further shows to the court that since his ownership of one-half interest in said mill that the defendant, W. H. Potter, has been using said mill and that he is entitled to account to your complainant for a reasonable rental for one-half interest in said mill since he refused and declined to recognize your complainant's interest in said mill.''

The quotation contains the entire allegations of the bill. The complainant prays that Potter be enjoined from selling or in any way molesting or incumbering the interest of E. J. Foster, in the mill, and that it be decreed that Foster is the owner of a one-half interest therein, and the property sold and the proceeds divided. There is also a prayer for a reference to determine a reasonable rental for which Potter is accountable, and a prayer for general relief.

The defendant, Potter, answered this bill asserting his entire ownership of this mill, and denied every allegation of the bill that questioned his ownership. He filed his answer as a cross-bill, in the nature of a bill of review, to review and annul the decree in cause 1980; but he was not a party to that bill. However, Foster answered the cross-bill, and upon the hearing the cross-bill was dismissed.

In a proceeding of this character the complainant can proceed only on the strength of his own title; unless he can estop the defendant from denying the complainant's title, because of the defendant's fraud, or acts and representations which amount to an estoppel. The bill contains no allegations of fraud, or a plea of an estoppel, and we could dismiss this issue were it not for the fact that the answer to the cross-bill does charge the defendant with fraud. We will discuss this issue hereafter.

As stated, the complainant, Foster, claims title by virtue of his purchase at the master's sale, and the decree in the cause of No. 1980; the allegations of the bill in this cause give a history of the former litigation, and it is only necessary to refer briefly to the allegations of the bill in 1980. It was a suit by the bank upon a $400 note against Jasper Jeffers, Jr., E. J. Foster, security, and F. V. Hamon, security (the cause was dismissed as to Hamon upon his plea of non est factum). The contents of the note were copied in the bill, and the original exhibited to it, and after exhibiting

the note and alleging the fact of its execution, it was further alleged that the note was due and unpaid, and prayed for a judgment, interest, and attorney's fees, "and that unless said sum is paid the property pledged as collateral to the note, to-wit, one sawmill and one pair of mules, set out and described in said note, be sold as provided in said note, and the amount which said property brings be applied as a credit on said note."

This prayer is followed by one for general relief; there was no prayer for an injunction, nor an attachment to be levied upon the property.

The note was drawn upon a form used by the bank where collateral security is given, and it is too long to set out in full; we will quote only the pertinent parts. Following the words ":For value received" at the conclusion of the note, we quote: "And has pledged as collateral security one sawmill owned by me and unencumbered in any way, also one pair of mules now owned by me and unencumbered in any way, and I agree to keep both the mules and sawmill unencumbered or hampered in any way until this note is paid and security released . . . do hereby authorize and empower the holder hereof for the purpose of liquidation of this note, and of all interest, attorney's fees, and cost thereon, to sell, transfer and deliver the whole or any part of said security, . . . without any previous demand, advertisement or notice, either broker's board or public or private sale, . . . at any time . . . with the right on the part of such holding to become the purchasers and the absolute owners thereof, free from all trust and claim. . . ."

We will state here that the bank did not obtain possession of the sawmill or mules, but the property remained in the possession of Jeffers.

"The defendant, Jasper Jeffers, and E. J. Foster, his surety, did not answer this bill and a pro confesso was taken against them. A decree was then entered in favor of the bank, granting it judgment upon the note, with interest and attorney's fees, and decreeing that 'complainant has a lien and had a lien on said one-half interest in said sawmill from and after the date of the note, to-wit: December 4, 1923, . . . and that said lien is a prior lien to any attempted sale of one-half interest in said sawmill or mules after the date of the note . . . and that if said sum of $491.30, together with costs of this cause are not paid within thirty days, the Master will, after giving legal notice, sell said one-half interest in said sawmill and said pair of mules for cash in hand to the highest and best bidder and an order of sale will issue accordingly if necessary to put the purchaser in possession of said mules and one-half interest in said sawmill. . . .'"

The judgment was not paid within thirty days and the master proceeded to sell the property as directed in the decree. He offered

the one-half interest in the sawmill for sale when E. J. Foster became the purchaser at the sum of $25, and the sale was reported by the master to the court. At the time of the sale the property was not in the possession or under the control of the master, and his description of the property and its location was reported as follows:

"Said property so sold is the one-half interest of Jasper Jeffers, Jr., in the sawmill described in the decree and known as the Hamon and Jeffers sawmill, formerly located on the land of Jasper Sexton at Cordell, Tennessee."

The court at chambers confirmed the master's report of sale and entered a decree reciting that the title in the mill was divested out of Jasper Jeffers and vested in the purchaser, E. J. Foster.

Upon this record the chancellor was of the opinion that the purchaser, E. J. Foster, acquired no title to Jeffers' interest in the sawmill, because there had been no attachment issued and levied upon the sawmill impounding it and bringing the res within the jurisdiction of the court for the enforcement of the lien. The chancellor went further and adjudicated the regularity of Judge Potter's title under the execution sale; there is no direct attack made upon Judge Potter's title in the pleading, and the complainant could not win upon the weakness of Judge Potter's title, but only upon the strength of his own. From the decree dismissing the bill the complainant has appealed to this court.

The method provided for the enforcement of all statutory liens, on personal property, where no method of enforcing the same is provided by the statute creating the lien, is by original attachment. Shannon's Code, section 5330. There is no statutory method provided for the enforcement of common-law liens, and at the common law a lien only entitles the holder, or lienee, to hold in his possession the chattel upon which the lien rested until the satisfaction of its claim. And loss of possession was loss of the lien. In this case, since the bank had no possession of the sawmill it had no common-law lien. But courts of equity recognize and enforce contractual liens. The question is: How can an equity court effectually enforce a contractual lien?

By an action against the property by impounding it by attachment or otherwise, and this is a proceeding quasi in rem.

"With respect to proceeding in rem and quasi in rem, the basis of the jurisdiction is the seizure of the property on which the judgment is to operate, and such jurisdiction cannot be acquired except by a lawful seizure, unless the action or proceeding is of such a character that the mere situs of the property to be effective within the territorial jurisdiction of the court is sufficient to confer jurisdiction." Court, 15 C. J., sec. 100, p. 802.

"Judgments dealing with status, ownership or liability of par-

ticular property, but which are intended to operate on these questions only as between the particular parties to the proceeding, and not to ascertain or cut off the rights or interest of all possible claimants, are so far in rem that jurisdiction may be acquired by the seizure or control of the court over the res, together with reasonable constructed notice to parties defendant, but, unlike judgment strictly in rem, they are binding only upon the parties joined in the action and thus notified, and have no effect upon the right or liability of strangers.

"Judgments, orders, or decrees held to be quasi in rem, in that jurisdiction may be acquired by seizure of the property involved, if any, and constructive notice, and in that they are binding, as to the res, on the parties but not on third parties, include: judgment in attachment and garnishment proceedings; a decree in a suit to reform a life insurance policy, or in an action to establish a trust in shares of stock; judgments or decrees in proceedings for the foreclosure of a mortgage or a mechanic's lien or other liens. . . . ." Judgments, 34 C. J., secs. 1667 and 1668, p. 1175.

The court has jurisdiction in the absence of actual seizure if the court has control over the res. If a party who has the actual possession of the res is before the court, then the res is within the power of the court, for it can compel the party to deliver the possession to an officer of the court. So, so long as the court has the control of the res it can exercise jurisdiction and enforce a lien against the chattel. Perry v. Young, 133 Tenn., 522, 182 S. W., 577, L. R. A., 1917B, 385. But of course if the court loses control over the res pending the suit, it can thereafter make no valid order in reference to the res. In this case the defendant Jeffers, who probably had possession of his one-half interest in the mill, was before the court; but before the execution of the decree of sale he lost possession of the res when it was taken out of his possession by levy and sale at a sheriff's sale, and the purchaser at the sheriff's sale, who was not a party to the cause 1980, acquired possession. The purchaser, Foster, at the master's sale, in cause 1980, acquired no title for the reason the master was not in possession of the chattel when he was attempting to sell, and the court had lost complete control over it. The decree confirming the sale and divesting title out of Jeffers and into the purchaser was ineffectual because at the time Jeffers had no title to divest, it having been divested out of him by the sheriff's sale.

Foster asserts ownership by virtue of a lis pendens notice.

"The filing of the bill does not create a lien, but it operates as a lis pendens, during which all transfers are void. The suit thus holds the property until the lien can be impressed on it by the levy of the attachment. Neither the statute nor the suit creates the lien. The levy creates the lien. Sharp v. Hunter, 7 Cold., 389, 394;

Allen v. Gilliland, 6 Lea, 535.'' Note 3 to section 5267, Shannon's Code.

Lis pendens notice comes to the aid of a valid judgment, but cannot validate a defective judgment. But for lis pendens notice to be effectual the pleading or process must specifically describe the property, in a sufficient manner that a stranger could take the pleading and papers and find the property as identified in the papers. This is the only description of the property which is found in the note copied in the bill: ''Have pledged as collateral security one sawmill owned by me and unencumbered in any way,'' and this description is applicable to any sawmill.

It is claimed that W. H. Potter practiced a fraud upon the purchaser, E. J. Foster, in his race of diligence and the procurement of a levy and sale of the interest of Jeffers, in satisfaction of Potter's debt or judgment. We have stated that no issue was made upon this question in the original bill in this cause, but that Foster, in the answer to the cross-bill, went into the alleged facts, and averred that he showed Potter the file in the cause of 1980, and with his knowledge Potter proceeded to have levied the execution and the sale of the property. It is averred that Potter had a suit pending against Jeffers and his partner, and that he abandoned the suit against Jeffers when he saw the bill in cause 1980. Therefore, if Potter hadn't abandoned the claim, and had notified the bank of the levy and sale under the execution, then Foster would have made Potter a party to the cause 1980, or consolidated this cause with the Potter proceeding. Assuming without deciding that this conduct was fraudulent and misled Foster, we cannot see that he was injured. If he had made Potter a party defendant to cause 1980, Potter would have asserted his claim which appears from the record to be a superior claim to that of Foster. Potter in his bill had impounded the property by attachment and garnishment, and could have defeated the lien under which Foster claimed as one of insufficient identity by description. Potter did not in any way impede the bank, through whom the purchaser Foster claims, in its proceeding to fasten upon the res, and foreclose its purported lien. The so-called fraud was only an incidental matter. Treating the allegations of the answer to the cross-bill as true, it does not follow as a matter of law that this was fraudulent conduct. Potter owed the parties no duty to act or to refrain from acting in the collection of his debt. It was a race of diligence.

We find no error in the decree of the lower court, and it is affirmed, with costs.

Snodgrass and Thompson, JJ., concur.