In re Ronald GLENN, Debtor.

MACK FINANCIAL CORPORATION, Plaintiff,

v.

PETERBILT OF CHATTANOOGA, INC., Defendant.

Bankruptcy No. 1–81–01315.
Adv. No. 1–81–0784.

United States Bankruptcy Court,
E. D. Tennessee.

May 11, 1982.

William Crutchfield, Jr., Chambliss, Bahner, Crutchfield, Gaston & Irvine, Chattanooga, Tenn., for plaintiff.

Kenneth L. Campbell, Baker & Campbell, Nashville, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

Both the plaintiff and the defendant assert lien claims against a truck owned by the debtor at the time he filed his petition in bankruptcy. The parties agreed for the truck to be released to the plaintiff to sell at foreclosure and hold the proceeds for disposition according to the court's decision. At the parties' request, the case was tried on the pleadings, the briefs, and an agreed stipulation of facts.

The facts can be summarized as follows.

The plaintiff perfected a security interest in a 1972 Peterbilt truck owned by the debtor. The debtor took the truck to the defendant for repairs. The defendant made the repairs, for which the charge was $2,660.46. The debtor delivered a check to the defendant in that amount, and in return the defendant allowed the debtor to have the truck. The debtor resumed use of the truck in the normal course of his business.

When the debtor's check for the repair bill was dishonored, the defendant requested that the debtor return the truck so that it could assert its lien for repairs. The debtor returned the truck.

The defendant asserts a common law artisan's lien for the amount of the repair bill, $2,660.46. The charges were for repairs only. The defendant does not assert any lien for storage charges.

In Tennessee there is a common law lien for repairs to a vehicle. *Manufacturers Acceptance Corp. v. Gibson*, 220 Tenn. 654, 422 S.W.2d 435 (1967); *Shaw v. Webb*, 131 Tenn. 173, 174 S.W. 273 (1914); *Forrest Cate Ford, Inc. v. Fryar*, 62 Tenn.App. 572, 465 S.W.2d 882 (1967); *Gem Motor Co. v. Securities Investment Co.*, 16 Tenn.App. 608, 65 S.W.2d 590 (1933); Tenn.Code Ann. § 66–14–101. The questions are whether the defendant has a common law lien and if so, whether it has priority over the plaintiff's security interest. The nature of the law is such that the questions may be indistinguishable.

Section 9–310 of the Uniform Commercial Code (UCC) as enacted in Tennessee, provides:

When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise. Tenn.Code Ann. § 47–9–310.

In two of the decisions cited above, the courts made it clear that under § 9–310 the common law lien or a statutory lien has priority only if the person who made the repairs has possession of the vehicle. *Manufacturers Acceptance Corp. v. Gibson; Forrest Cate Ford, Inc. v. Fryar.* The common law lien exists only if the creditor has possession. See *Shaw v. Webb*, 131 Tenn. 173, 174 S.W. 273 (1914); *Gem Motor Co. v. Securities Investment Co.*, 16 Tenn.App. 608, 65 S.W.2d 590 (1933); *Potter v. Foster*, 16 Tenn.App. 336, 64 S.W.2d 520 (1933). The result is that if the lien exists, it has priority over a prior perfected security interest. The question is whether once the lien is lost by relinquishment of possession it can be re-established by regaining possession.

Logically it does not make sense for regaining possession to re-establish the original common law lien. The common law lien depends on possession. See generally 2 Gil-

more Security Interests in Personal Property §§ 33.2 & 33.3 (1965). Once possession is lost, the lien ceases to exist. Regaining possession may create a new lien, but it cannot resurrect the original lien.

As a practical matter, however, it appears the lien can exist any time the person who made the repairs has possession and has not been paid. Why shouldn't the defendant in this case have a lien on the truck to secure payment of the repair bill? Moreover, since its original lien would have had priority over the plaintiff's security interest, why shouldn't its present lien have priority?

For the purpose of deciding, the court assumes that when the defendant regained possession of the truck, it acquired a common law lien to secure payment for the earlier repairs. The question, then, is why the lien shouldn't have priority over the plaintiff's security interest, just as it would have had priority if the question had arisen during the defendant's original possession.

Consider the situation, as in this case, where Secured Party has a perfected security interest in a truck that is repaired by Garage, which afterward releases the truck to Debtor in return for a check that is dishonored. Debtor remains in possession.

Even if it knows of the repairs, Secured Party has reason to assume Garage was paid and has no claim against the truck. Otherwise, the debtor would not have possession. Indeed, having given up possession, Garage has no common law lien against the truck to secure payment of the repair bill. Furthermore, secured parties are not likely to know of all the repairs done to a vehicle in the debtor's possession.

The defendant in effect argues that Garage should have not just a secret, potential lien on the truck but a secret, potential lien with priority over Secured Party's perfected security interest, no matter how long the debtor remains in possession after the repairs were done. Such a situation would be intolerable and goes against the grain of the UCC.

█ A secured party should be able to determine at any moment the place of its claim among all claims against the collateral. This requires notice. In this respect, possession serves a dual purpose as to an artisan's lien for repairs. It makes the lien possible and it gives notice of the lien. Once possession is relinquished, the person who did the repairs cannot expect to have it reinstated with priority. That would create an ever-present dangerous uncertainty for parties, including prior secured parties, who deal with the debtor with respect to goods in his possession.

A state might create a statutory lien for repairs effective against some interests without possession or some other notice, but the question in this case is whether the defendant should have a common law lien with priority. The court in effect adopts the long-standing rule that the common law lien expires when possession is relinquished. Regaining possession does not reinstate the lien with its priority, though it may give a new lien. Cf. *Diamond Service Station v. Broadway Motor Co.*, 158 Tenn. 258, 12 S.W.2d 705 (1929).

At least one federal court has already held that the original lien for repairs is not resurrected, with its priority, when the person who did the repairs regains possession. *United States v. Crittenden*, 563 F.2d 678 (5th Cir. 1977). In that case, however, the court considered that it was creating a rule of federal law and reasoned by analogy to the Internal Revenue Code. In this case state law controls, and so the analogy is less appropriate.

In another case, the Mississippi Supreme Court reached the opposite conclusion as to the effect of a lapse in possession. This court agrees with Chief Justice Patterson's dissent. His point was also the uncertainty created by such a rule, though he pointed out some results of the rule not mentioned in the discussion thus far.

The result of the opinion, I fear, is to permit priority of creditors to be determined by the debtor. If he chooses to return property once relinquished by a repairman, the repairman prevails, but if he chooses not to relinquish possession of the property, the secured creditor prevails.

At the least, the majority opinion, in the absence of voluntary relinquishment, invites competition for possession between a secured party and a repairman who has previously relinquished possession of the property.

I dissent because I am convinced the legislature by adoption of the Uniform Commercial Code intended priorities to be determined in a uniform manner by statute, and not by choice of a debtor or by result of a race between creditors for possession.

*Thorp Commercial Corp. v. Mississippi Road Supply Co.*, 348 So.2d 1016, 22 U.C.C.Rep. Serv. 818, 821–22 (Miss.1977).

The court concludes that the defendant does not have a lien with priority over the plaintiff's security interest. There remains the question of whether the defendant has any enforceable lien on the truck to secure the repair bill. One of the cases cited above suggests that regaining possession of a vehicle does not create a new common law lien to secure payment for repairs done during an earlier possession. *Diamond Service Station v. Broadway Motor Co.* Each possession would create a lien only for repairs done during that possession. The court does not necessarily agree with this rule but cannot overrule it. The question is whether the defendant might have some other kind of lien.

As to most "goods" the UCC allows a security interest to be created and perfected by possession by the secured party. UCC §§ 9–105(1)(f), 9–203(1)(a), 9–302(1)(a), 9–305. The UCC allows the creation of a security interest in a motor vehicle by the debtor's pledge of the vehicle to the secured party. That is essentially what happened in this case when the debtor redelivered the truck to the defendant. The court thinks it is clear a security interest in a motor vehicle can also be perfected by possession. Section 9–302(4) of the UCC means only that compliance with the certificate of title act is required when filing would be required for perfection. It does not eliminate perfection by possession. See UCC §§ 9–302(1)(a), 9–305.

Of course the defendant's security interest is not entitled to priority over the plaintiff's security interest. Tenn.Code Ann. § 47–9–312(5)(b). The plaintiff's secured debt is entitled to be satisfied first out of the proceeds of the sale. Whether or when the defendant is entitled to be paid out of the remaining proceeds, if any, depends on what rights the trustee in bankruptcy may have.

There remains one other point to be considered. The defendant argued that "it is hardly equitable to allow a possessory repairmen's lien to be lost forever when actual possession is temporarily broken by the owner's obtaining property by devious means." Defendant's Trial Memorandum, p. 4.

The court does not believe the debtor's "devious means" of obtaining possession should make a difference. A person who makes repairs can protect itself against losing possession without payment. The defendant was not required to release the truck when it was given the check. It could have held the truck until the check cleared. It could have refused to return the truck except on payment in cash or by certified check. Other means of wrongfully obtaining possession might make a difference but not this one.

Finally, a lapse in possession might be so short that it should be ignored, but the court is not prepared to say how short a lapse that would be. The court cannot say the lapse in this case was that short. The pleadings and the stipulation of facts do not reveal how long the debtor had possession after the defendant released the truck to him.

The court will enter an order in accordance with this memorandum.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.