M & I WESTERN STATE BANK, Plaintiff-Respondent,

v.

Marilyn A. WILSON, Defendant,

Darin TRELEVEN, d/b/a Third Party Defendant-Appellant.

Court of Appeals

*No. 92-0692. Submitted on briefs September 14, 1992.—Decided November 11, 1992.*

(Also reported in 493 N.W.2d 387.)

On behalf of the third party defendant-appellant the cause was submitted on the briefs of *Patrick G. Seubert* of *Patrict G. Seubert & Associates* of Neenah.

On behalf of the plaintiff-respondent the cause was submitted on the brief of *Douglas K. Marone* of *Steinhilber, Swanson, Mares, Curtis, Marone & Wolk* of Oshkosh.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

ANDERSON, J.   Darin Treleven appeals from a judgment of the trial court which awarded possession of

358

a truck owned by Marilyn A. Wilson to the M&I Western State Bank (bank). Because the earlier release of the truck was a conditional release and the bank had notice of Treleven's lien through his possession of the truck, we reverse.

The bank holds a security interest in a 1978 Peterbilt truck owned by Wilson. Treleven repaired the truck seven times, each time releasing the vehicle to Wilson so she could earn the money to pay Treleven for the repairs. The repairs were invoiced between November 20, 1990 and April 23, 1991.

After Wilson defaulted on her payments to the bank, the bank commenced a replevin action. The parties made a repayment agreement; however, Wilson again defaulted and the bank obtained a judgment of replevin on April 9, 1990. The sheriff attempted to enforce the judgment but was unable to locate the truck. On May 12, 1991, employees of the bank saw the vehicle and followed it to Treleven's place of business, D.T. Truck Repair, Inc. The sheriff again tried to serve the writ of execution, but Treleven refused to release the vehicle, asserting that he held a mechanic's lien for services rendered.

After the attempted levy, the bank filed a second replevin action to determine who was entitled to possession of the truck and named Treleven as a third-party defendant. At the date of the hearing, Treleven still was owed $3497.26 for the repairs plus $1273.10 for interest and storage as of the date of the hearing, January 30, 1992. The bank's balance as of January 2, 1992 was $3032.16. The bank's estimate of the value of the truck is approximately $3000. If this estimate is correct, only the lien with first priority would be paid from the proceeds of the sale of the truck.

The trial court held that Treleven's release of the vehicle to Wilson constituted a waiver of Treleven's lien as to the bank and that the bank's lien had priority. The trial court ordered the bank to take possession and conduct a sale of the truck. On appeal, Treleven argues that the conditional release of the truck to the owner does not amount to a waiver of the lien and, alternatively, that he should be able to recover from the bank on the theory of unjust enrichment. Because we agree that the conditional release and regained possession do not waive Treleven's mechanic's lien or affect its priority over the prior secured interest, we do not have to address Treleven's unjust enrichment claim.

It is not disputed that before Treleven released possession of the truck, he had a mechanic's lien on Wilson's truck. Section 779.41(1), Stats., governs mechanic's liens and states in part:

> Every mechanic and every keeper of a garage or shop, and every employer of a mechanic who transports, makes, alters, repairs or does any work on personal property at the request of the owner or legal possessor of the personal property, has *a lien on the personal property* for the just and reasonable charges therefor, including any parts, accessories, materials or supplies furnished in connection therewith and *may retain possession of the personal property until the charges are paid.* [Emphasis added.]

It also is not disputed that before Treleven released the truck to Wilson, Treleven's mechanic's lien had priority over the bank's security interest. Section 409.310, Stats., states:

> When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, *a lien upon goods in the*

*possession of such person given by statute* or rule of law for such materials or services *takes priority over a perfected security interest* unless the lien is statutory and the statute expressly provides otherwise. [Emphasis added.]

Section 409.310 gave Treleven's mechanic's lien priority over the security interest because Treleven was in possession of the truck, Treleven's lien was created by sec. 779.41(1), Stats., and sec. 779.41(1) does not expressly address the priority given to the lien created.

The issue in this case is whether the mechanic, by allowing the owner to use her vehicle on a temporary basis before paying the repair bill, lost the lien or its priority on that vehicle. The interpretation of statutes is a question of law which we review *de novo*. *Central Nat'l Bank v. Dustin,* 107 Wis. 2d 614, 617, 321 N.W.2d 321, 322 (Ct. App. 1982). We first must examine the language of sec. 779.41(1), Stats., *see Dustin,* 107 Wis. 2d at 617, 321 N.W.2d at 322, to see if the relinquishment and resumption of possession have any affect on the existence of Treleven's mechanic's lien. Section 779.41(1) provides that a mechanic may retain possession of the personal property until the charges are paid. This provision allows the mechanic to keep a customer's property until the mechanic has been paid, without a court order. However, once the mechanic has relinquished possession of the vehicle, this statute does not provide the mechanic with a remedy even if the bill has not been paid. The statute also does not tell us whether the mechanic must retain possession of the vehicle to retain the lien it states only that the mechanic "*may* retain possession."

But the mechanic's lien statute may not be interpreted in a vacuum. "[M]echanic's lien laws provide *new*

*and additional remedies* to those of the common law and are to be liberally construed to accomplish their equitable purpose of aiding materialmen and laborers to obtain compensation for material used and services bestowed upon property of another and thereby enhancing its value." *Wiedenbeck- Dobelin Co. v. Mahoney*, 160 Wis. 641, 646, 152 N.W. 479, 481 (1915) (emphasis added). Accordingly, in addition to the statutory language of sec. 779.41(1), Stats., we may look to the common law of mechanic's liens and those Wisconsin decisions incorporating common law principles into the statutory mechanic's lien law to determine whether Treleven's lien survives.

Treleven argues that according to *Sensenbrenner v. Mathews*, 48 Wis. 250, 253-54, 3 N.W. 599, 600 (1879), the delivery of the vehicle to the owner must be both voluntary and unconditional in order to constitute a waiver of the lien. Trevelen maintains that because he returned the vehicle to the owner so she could pay for the repairs and the allowed use was only on a temporary basis, the delivery of the vehicle was conditional and his lien survives. The bank also relies on *Sensenbrenner* for its argument that Treleven waived his lien by releasing the vehicle to Wilson. Alternatively, the bank asserts that even if the lien was not destroyed between Treleven and Wilson when the vehicle was conditionally released to Wilson, the lien was destroyed as to third persons.

Because *Sensenbrenner* is distinguishable on its facts from the present case, neither party's reliance on that case is warranted. The court in *Sensenbrenner* found that the delivery of a buggy by the mechanic to the owner was unconditional and held that this unconditional delivery operated as a waiver of the lien. *See id.* at 253, 3 N.W. at 600. In contrast, Treleven's release of the vehicle was conditional—*Sensenbrenner* says nothing of

the effect of a conditional release to the owner. *Sensenbrenner* also does not explicitly hold that the only way to waive a lien is through the voluntary and unconditional release of the property; *Sensenbrenner* merely states that this is one way to waive a lien. For these reasons, *Sensenbrenner* is not controlling precedent based on the facts of this case.

No Wisconsin court has decided whether the lien is lost once the mechanic conditionally releases the vehicle to the owner. The general and modern rule can be found in RESTATEMENT OF SECURITY § 80 (1941).[1] This rule states that when the bailor (owner) is under an obligation to return the vehicle to the lienor (mechanic), the lien is revived upon the recovery of the vehicle, subject only to the interests of bona fide purchasers for value and attaching or levying creditors who do not have notice of the lienor's interest.

The bank would like a rule that upon a conditional release, the lien is lost as to all third parties. The Restatement reflects a more balanced view, recognizing

---

[1] RESTATEMENT OF SECURITY § 80 (1941), provides in relevant part:

SURRENDER OF POSSESSION BY POSSESSORY LIENOR TO THE BAILOR.
   (1)   Subject to the rules stated in Subsection[ ] . . . (3), where a possessory leinor surrenders possession of a chattel to a bailor, the lien is terminated.

. . ..
   (3)   Where a lienor surrenders possession of a chattel to the bailor under circumstances which impose upon the bailor an obligation to return it, the lienor can recover the chattel from the bailor and others except a bona fide purchaser for value and an officer of the law who has levied on or attached the chattel at the instance of one who has become a creditor without notice of the lienor's interest.
   (4)   In the circumstances described in Subsection (3) where the chattel is recovered by or returned to the lienor, the lien is revived, subject to superior interests of those third persons referred to in that Subsection.

that not all interests of third parties are affected by the conditional release. While the mechanic retains possession, third parties at least would have constructive notice of the mechanic's lien because they would be expected to examine the property in the mechanic's possession and be expected to know of the mechanic's lien statute. After a conditional release, those parties purchasing the vehicle, extending new credit, or levying on the vehicle would be vulnerable because even after examinations of the motor vehicle filings and the vehicle, there would be no way for them to know of the mechanic's prior interest. A creditor whose interest arose before the mechanic's lien would not have this concern. At the time the creditor extends credit, it is presumed to know the mechanic's lien statutes which could subordinate its interest to that of a mechanic making a later repair. This is a known risk to the creditor. A creditor also has the opportunity to protect itself by writing into the security agreement that all subsequent repairs must be approved by the creditor.

Once the mechanic's lien arises, in most circumstances, the later conditional release does no further damage to the prior creditor and actually can be advantageous to the creditor. For example, in a case such as this where the vehicle is necessary to the owner's business, the conditional release allows the owner to generate cash to pay off the mechanic's lien and make payments on the creditor's prior loan. If the mechanic were forced to keep possession of the vehicle, the owner would be unable to raise the cash to pay off either the mechanic or the creditor.

The circumstance where a prior creditor could be damaged by the conditional release also is covered by the Restatement. If a prior creditor does not have notice of the mechanic's lien and goes through the expense of

levying upon the vehicle while it is in the owner's possession, then the levying creditor is accorded the same protection as the bona fide purchaser for value or the new attaching creditor. This rule gives the prior creditor a "window of opportunity" to levy, but the mechanic can protect the lien by notifying prior creditors of the conditional release arrangement.

For the reasons stated above, we reject the bank's argument that a conditional release of the vehicle destroys the lien as to all third parties. Instead, we adopt the Restatement's rule that upon a conditional release, the lien is enforceable against all parties except a bona fide purchaser for value or a subsequent attaching or levying creditor who has no notice of the mechanic's interest. Upon the resumption of possession, the lien is revived and retains its priority as before the release, except it is subordinate to the bona fide purchaser or attaching or levying creditor. Applying this rule to the facts of the case, it is apparent that the mechanic's lien is superior to the bank's security interest. The fact that the truck was found at the mechanic's place of business well after the repairs were made supports Treleven's claim that the release of the vehicle was conditional. Furthermore, the bank is not afforded the protection given to the levying creditor because the sheriff levied upon the vehicle while it was in Treleven's possession, and thus had notice of Treleven's interest.

Because Treleven's lien was not waived by the conditional release under sec. 779.41(1), Stats., we next must examine whether the conditional release destroyed the lien's priority under sec. 409.310, Stats. Neither party addressed this issue, but commentary and cases interpreting Uniform Commercial Code § 9-310, the model upon which sec. 409.310 is based, make clear that

the possession requirement of this statute is separate from any possession requirement of the underlying mechanic's lien.

U.C.C. § 9-310 gives priority only to the mechanic in possession of the vehicle. *See* U.C.C. § 9-310 comment 2; 2 G. GILMORE, SECURITY INTERESTS IN PERSONAL PROPERTY § 33.3, at 887-88 (1965); B. CLARK, THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE § 3.07[3][b], at 3-70 (2d ed. 1988); 9 W. HAWKLAND, UNIFORM COMMERCIAL CODE SERIES ARTICLE 9: SECURED TRANSACTIONS § 9-310.02, at 173 (1991); 9 R. ANDERSON, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 9-310:9, at 228 (3d ed. 1985). It is uniformly held that if the mechanic voluntarily gives up possession of the vehicle, § 9-310 cannot be relied upon by the mechanic to give his lien priority over the prior secured interest. *See United States v. Crittenden,* 563 F.2d 678, 691 (5th Cir. 1977), *vacated and remanded,* 440 U.S. 715 (1979); *In re Glenn,* 20 B.R. 98, 99 (Bankr. E.D. Tenn. 1982); *Forrest Cate Ford, Inc. v. Fryar,* 465 S.W.2d 882, 884 (Tenn. App. 1970).

The question then becomes whether the resumption of possession will allow sec. 409.310, Stats., to be applied to give the mechanic's lien priority. The statute's language does not tell us whether continuous possession is required. When a statute is ambiguous we must look to other sources to determine legislative intent. *Hainz v. Shopko Stores,* 121 Wis. 2d 168, 172, 359 N.W.2d 397, 400 (Ct. App. 1984). Among the few courts that have decided this issue, the jurisdictions do not agree as to the effect of resuming possession under 9-310. The three cases discussing this issue the most thoroughly are *Glenn, Crittenden* and *Thorp Commercial Corp. v. Mississippi Road Supply Co.,* 348 So. 2d 1016 (Miss. 1977).

The opinion of the Mississippi Supreme Court in *Thorp* held that the mechanic retained priority under the Mississippi equivalent to § 9-310 when he resumed possession of equipment. *Thorp*, 348 So. 2d at 1018. The court reasoned that the status or rights of the parties did not change between the date the mechanic lost possession of the equipment and the date it was restored to the possession of the mechanic. *Id.* Furthermore, the court recognized that the secured party was not and could not be prejudiced by the restoration. *Id.* Finally, the court concluded that because the Mississippi equivalent of § 9-310 did not clearly express an intention to reverse long-established principles of law, 9-310 had to be read together with the older mechanic's lien statute and prior case law which established that mechanic's liens take priority over prior security interests. *Thorp*, 348 So. 2d at 1018. These justifications supported the court's opinion that priority status of the mechanic's lien was retained under § 9-310 when the mechanic regained possession.

*Glenn* and the dissenting opinion in *Thorp* stated that the priority of the mechanic's lien is lost under statutes based on § 9-310 when there is a lapse in the mechanic's possession. *Glenn*, 20 B.R. at 101; *Thorp*, 348 So. 2d at 1018 (Patterson, C.J., dissenting). *Glenn* reasoned that a rule which allowed the reinstatement of priority would create an ever-present dangerous uncertainty for parties, including prior secured parties, who deal with the debtor with respect to goods in his possession because the prior secured party would have no notice of the mechanic's lien. *Glenn*, 20 B.R. at 99. *Glenn* also based its conclusion on the same concerns of the dissent in *Thorp*—a rule reinstating priority under the statute would permit the priority of the creditors to be determined by the debtor.

> If he chooses to return property once relinquished by a repairman, the repairman prevails, but if he chooses not to relinquish possession of the property the secured creditor prevails. . .. [A rule reinstating priority under the statute] invites competition for possession between a secured party and a repairman who has previously relinquished possession of the property.

*Id.* at 100-01 (quoting *Thorp,* 348 So. 2d at 1017 (Patterson,C.J., dissenting)).

The Fifth Circuit Court of Appeals held that a mechanic retained his priority over a prior security interest only to the extent that the mechanic continuously possessed the collateral. *Crittenden,* 563 F.2d at 691. The court analogized § 9-310 to 26 U.S.C. § 6323(b)(5), a provision of the Federal Tax Lien Act, which gives priority to the mechanic's lien only if the mechanic "is, and has been, continuously in possession of such property from the time such lien arose." 26 U.S.C. § 6323(b)(5). The court justified the continuous possession requirement by reasoning that while considerations of equity and fairness created the mechanic's lien exception to the normal priority rules, at some point when the mechanic gives up possession and the repairs were made in the more distant past the mechanic's interest becomes indistinguishable from the ordinary creditor. *Crittenden,* 563 F.2d at 691-92 n.23.

In light of the longstanding Wisconsin policy of protecting materialmen and laborers, *see Wiedenbeck-Dobelin Co.,* 160 Wis. at 646, 152 N.W. at 481, we find the Mississippi court's opinion in *Thorp* to be the most persuasive. The bank has not presented any facts which would show how its rights were affected or its interest was prejudiced by the release of the property to Wilson and Treleven's subsequent repossession. If anything, the

facts show that the bank was better off through the conditional release because it afforded Wilson the resources to pay off both debts.

Like Mississippi's law in *Thorp*, Wisconsin case law decided prior to the enactment of sec. 409.310, Stats., gave priority to a mechanic's lien over a prior security interest. *See Jesse A. Smith Auto Co. v. Kaestner*, 164 Wis. 205, 159 N.W. 738 (1916). Wisconsin's enactment of sec. 409.310did not expressly state that its effect was to displace prior law in this area. Commentary to the Uniform Commercial Code reveals the drafter's view that § 9-310 was to reverse prior case law which *subordinated* the mechanic's lien to prior security interests, but it does not state how the rule was to affect prior decisions holding the mechanic's lien superior. *See* U.C.C. § 9-310 comment 2. Because Wisconsin's prior case law and sec. 409.310 can be read in a consistent manner, we decline to interpret the statute otherwise.

Finally, but not least importantly, the plain language of sec. 409.310, Stats., gives priority to the mechanic "in possession." It does not require "continuous possession" or "retained possession." We must construe laws relating to mechanic's liens in a way to accomplish their equitable purpose of aiding mechanics in obtaining compensation. *See Wiedenbeck-Dobelin Co.*, 160 Wis. at 646, 152 N.W. at 481.

The fifth circuit's opinion in *Crittenden* which read the continuous possession requirement into § 9-310 is not persuasive. In *Crittenden*, the fifth circuit was interested in formulating a federal standard to determine priorities under the Uniform Commercial Code. Thus, it looked to the Federal Tax Lien Act for guidance in its interpretation of the possession requirement of § 9-310. *Crittenden*, 563 F.2d at 691. On appeal the Supreme

Court reversed, stating that the court should not be looking to federal standards to determine priorities, but should apply Georgia's statutes. *United States v. Kimbell Foods,* 440 U.S. 715, 740 (1979). On remand, the fifth circuit held that Georgia's priority statute was basically the same as model 9-310 and, without discussion, applied the same interpretation of the statute to the facts in the case. *United States v. Crittenden,* 600 F.2d 478, 479-80 (5th Cir. 1979). Unlike the fifth circuit's first *Crittenden* opinion, we are not concerned with formulating a national standard and do not need to look at other federal laws interpreting "possession;" under Wisconsin law, we must interpret sec. 409.310, Stats., in a way that aids the mechanic in obtaining compensation. It is not in a mechanic's best interest to interpret "possession" in sec. 409.310 as "continuous possession," and we decline to do so. Therefore, because Treleven was in possession of the vehicle at the time the bank's lien was enforced, Treleven's mechanic's lien had priority over the bank's interest under sec. 409.310.

*By the Court.*—Judgment reversed and cause remanded.