# United States Bankruptcy Appellate Panel

## FOR THE EIGHTH CIRCUIT

———

No. 06-6062 NE

———

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Michael R. Borden and | * | |
| Rhonda F. Borden, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Bellamy's Inc., | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Creditor - Appellant, | * | District of Nebraska |
| | * | |
| v. | * | |
| | * | |
| Genoa National Bank, | * | |
| | * | |
| Creditor - Appellee, | * | |

———

Submitted: February 9, 2007
Filed: March 9, 2007

———

Before KRESSEL, Chief Judge, SCHERMER, and VENTERS, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Bellamy's Inc. ("Artisan") appeals the bankruptcy court's order determining that the lien of Genoa National Bank ("Lender") in certain farm equipment owned by

Michael R. Borden ("Debtor") takes priority over the Artisan's lien in the same equipment. We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we reverse.

## ISSUE

This case involves a priority dispute between two lienholders: the Lender who asserts a first priority blanket lien on all of the personal property of the Debtor and his wife, and the Artisan who asserts an artisan's lien on certain equipment by virtue of repairs to the equipment. After filing bankruptcy, the Debtor took the equipment from the Artisan without authority, used it in his farming operations, and later returned the equipment to the Artisan's possession. The question on appeal is whether the Artisan has a lien which takes priority over the Lender's lien. In order to answer this question, we must determine if the Artisan lost its lien when the Debtor removed the equipment from the Artisan's possession and what impact, if any, the Debtor's post-petition return of the equipment to the Artisan had on its lien. We conclude that the Artisan did not lose its lien when the Debtor took the equipment from its possession, that the Debtor's return of the equipment was not necessary for the Artisan to have a lien, and that the Artisan's lien has priority over the Lender's blanket lien.

## BACKGROUND

On June 25, 2002, the Debtor and his wife granted the Lender a blanket security interest on all of their personal property, including machinery and equipment then owned and thereafter acquired. The Lender perfected its security interest by filing a UCC financing statement with the Nebraska Secretary of State on June 26, 2002.

On separate occasions in late 2004, the Debtor took a certain cornhead and a certain tractor (collectively the "Equipment") to the Artisan for repairs. The Artisan

2

performed the repairs and in February 2005 sent the Debtor a bill in the amount of $3,811.46 for the work performed on the cornhead and in March 2005 sent a bill in the amount of $1,281.34 for the work performed on the tractor. The Debtor did not have the money to pay for the repairs and the Artisan refused to release the Equipment to the Debtor without payment, so the Equipment remained in the Artisan's possession.

On April 1, 2005 ("Petition Date"), the Debtor and his wife filed a joint voluntary petition for relief under Chapter 12 of the Bankruptcy Code. The Equipment was in the Artisan's possession on the Petition Date. In June 2005, the Debtor took the tractor from the Artisan's lot without permission, drove it to his farm, and used it in connection with his farming operations. The Artisan discovered the tractor was missing and contacted the Debtor to inquire if he had it in his possession. The Debtor admitted that he had taken the tractor, explained that he needed it for his farming operations, and agreed to return it to the Artisan as soon as he was finished using it. The tractor broke down while the Debtor was using it. Nevertheless, the Debtor returned the tractor to the Artisan in the fall of 2005.

In September 2005, the Debtor took the cornhead from the Artisan's lot without permission. The Artisan became aware that the cornhead was missing and contacted the Debtor regarding its whereabouts. The Debtor admitted that he had taken the cornhead, explained that he was using it to harvest corn, and agreed to return it as soon as he completed harvesting the crop. The Debtor returned the cornhead to the Artisan in November 2005.

In April 2006, the Lender filed a motion to determine the priority of the respective liens asserted by the Lender and the Artisan in the Equipment. The bankruptcy court determined that no controlling law existed in Nebraska governing the situation of competing liens where an artisan loses possession of the personal property through action of the property owner. The bankruptcy court looked to other

jurisdictions for guidance and found that other courts faced with the issue had reached conflicting results. The bankruptcy court decided that the Lender's lien had priority over the lien asserted by the Artisan. In reaching its decision, the bankruptcy court concluded that continuous possession is required to maintain an artisan's lien. Alternatively, the bankruptcy court held that even if continuous possession is not required, the automatic stay prevented the Artisan from regaining possession of the Equipment post-petition. Therefore the Artisan could not have had a possessory artisan's lien. The Artisan filed a motion to reconsider which was denied by the bankruptcy court. The Artisan appealed.

## STANDARD OF REVIEW

The facts are not in dispute. We review the bankruptcy court's conclusions of law *de novo*. *Dapec, Inc. v. Small Bus. Admin., U.S. (In re MBA Poultry, L.L.C.)*, 291 F.3d 528, 533 (8th Cir. 2002).

## DISCUSSION

Nebraska law provides a lien to any person who repairs a vehicle, machinery, or a farm implement while in such person's possession for the reasonable or agreed charges for the work done or materials furnished on or to such vehicle, machinery, or farm implement and authorizes the artisan to retain possession of the property until the charges are paid. Neb. Rev. Stat. § 52-201. Such a lien is referred to as an artisan's lien. Nebraska law also recognizes a possessory lien as an interest, other than a security interest or an agricultural lien, which secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of such person's business which is created by statute or rule in favor of the person and whose effectiveness depends on the person's possession of the goods. Neb. Rev. Stat. U.C.C. § 9-333(a). An artisan's lien falls within this definition of possessory lien under Nebraska law. A possessory lien on goods, such as an

4

artisan's lien, has priority over a security interest in the goods unless the possessory lien is created by a statute that expressly provides otherwise. Neb. Rev. Stat. U.C.C. § 9-333(b). The artisan's lien statute does not provide otherwise; accordingly, an artisan's lien has priority over a previously perfected security interest in the same goods.

In order to determine the respective rights of the Lender and the Artisan in the Equipment, we must determine if the Artisan has an artisan's lien in the Equipment under Nebraska law. If the Artisan does, its lien has priority over the Lender's security interest in the Equipment. In making this determination, we must answer the difficult question of whether the Artisan has a possessory lien where it involuntarily lost and later regained possession of the Equipment without court authority following the Debtor's bankruptcy filing. The statute is silent on this situation and no Nebraska court has addressed this situation other than the trial court below.

Courts from other jurisdictions have addressed various situations where artisans have lost possession of the personal property to which they provided services yet asserted a lien thereon either without possession or after regaining possession. Some general rules can be gleaned from the case law. First, possession is generally required for a possessory lien. *Mack Fin. Corp. v. Peterbilt of Chattanooga, Inc. (In re Glenn)*, 20 B.R. 98, 99-100 (Bankr. E.D. Tenn. 1982); *Gen. Motors Acceptance Corp. v. Colwell Diesel Serv. & Garage, Inc.*, 302 A.2d 595, 597 (Me. 1973); *Yellow Mfg. Acceptance Corp. v. Bristol*, 236 P.2d 939, 946 (Or. 1951). If an artisan surrenders possession, the artisan no longer has a possessory lien with priority over pre-existing security interests. *Yellow Mfg. Acceptance Corp. v. Bristol*, 236 P.2d at 946. Some courts recognize a continuing lien as between the artisan and the owner after return of possession to the owner; however, such lien lacks priority over pre-existing security interests. *Forrest Cate Ford, Inc. v. Fryar*, 465 S.W.2d 882, 883-84 (Tenn. Ct. App. 1971); *Yellow Mfg. Acceptance Corp. v. Bristol*, 236 P.2d at 946-47. Other courts relegate the lien to a state of suspended animation upon release of the goods to the

5

owner; the artisan cannot enforce the lien while it is in a state of suspended animation. *Gordon v. Sullivan*, 188 F. 2d 980, 981-82 (D.C. Cir. 1951). In this situation, if the artisan regains possession lawfully, the ability to enforce the artisan's lien is once again available to the artisan. *Id.* at 982.

Where the artisan loses possession involuntarily, the artisan does not necessarily lose the artisan's lien. *Smith v. Cooper Chevrolet, Inc.*, 404 So.2d 49, 51 (Ala. 1981); *Finch v. Miller*, 531 P.2d 892, 893 (Or. 1975)(en banc); *Gen. Motors Acceptance Corp. v. Colwell Diesel Serv. & Garage, Inc.*, 302 A.2d at 597; *Yellow Mfg. Acceptance Corp. v. Bristol*, 236 P.2d at 947. Likewise, a conditional release of goods does not necessarily defeat the artisan's lien. *Smith v. Cooper Chevrolet, Inc.*, 404 So.2d at 51. This result follows at least with respect to holders of prior security interests who are not impaired by the conditional release. *M & I W. State Bank v. Wilson*, 493 N.W.2d 387, 390 (Wis. Ct. App. 1992). Some courts hold that an artisan's lien lost when possession is lost is revived upon resumption of possession. Such a lien retains its priority as before the release except that the lien is subordinate to the interests of a bona fide purchaser or a creditor who attached or levied on the property while it was in the possession of the owner. *M & I W. State Bank v. Wilson*, 493 N.W.2d at 390. The *M & I Western State Bank v. Wilson* court expressly held that continuous or retained possession is not required. *Id.* at 392. See also *Thorp Commercial Corp. v. Mississippi Road Supply Co.*, 348 So. 2d 1016 (Miss. 1977), holding that where there was no change in the status or rights of the parties between the date personal property was delivered to the owner and the date it was returned to the artisan, the prior lender was not prejudiced by the restoration of the artisan's lien which had priority over the pre-existing security interest.

We conclude that the Artisan did not lose its artisan's lien in the Equipment when the Debtor took the Equipment without the Artisan's knowledge or consent. Such involuntary loss of possession does not defeat the Artisan's lien. *Smith v. Cooper Chevrolet, Inc.*, 404 So.2d at 51; *Finch v. Miller*, 531 P.2d at 893; *Gen.*

6

*Motors Acceptance Corp. v. Colwell Diesel Serv. & Garage, Inc.*, 302 A.2d at 597; *Yellow Mfg. Acceptance Corp. v. Bristol*, 236 P.2d at 947. Furthermore, even if the Artisan's failure to take action to regain possession of the Equipment can be deemed consent to the Debtor's prior wrongful taking of the Equipment, such after-the-fact consent could not have been more than a conditional consent to the Debtor's temporary use of the Equipment with an agreement to return it to the Artisan. A conditional consent to a prior wrongful taking likewise does not defeat the Artisan's lien. *M & I W. State Bank v. Wilson*, 493 N.W.2d at 390; *Smith v. Cooper Chevrolet, Inc.*, 404 So.2d at 51.

This result is consistent with the policy underlying the creation and priority of security interests. A lien or security interest must be perfected. The purpose of perfection is to give the world notice of the lien or security interest. Notice is generally accomplished in one of three ways: by registering the lien with an agency (usually a local government entity or a secretary of state's office), by noting the lien on the title, or by possession. Third parties can learn of any liens or security interests in any particular property by searching the records of the appropriate authority or by viewing the title. If no lien or security interest is disclosed, the third party may rely on the assumption that the property is owned free and clear of any liens if the property is in the owner's possession.

An artisan's lien does not require registration with any entity. Therefore, in order to give notice of the lien, the artisan is permitted to retain the property until receiving payment for the services provided to the property. Upon payment the lien is satisfied and the artisan releases the property. A third party interested in the property can easily learn that the property is not in the owner's possession and is then put on inquiry notice to determine why the owner does not have possession of the property. If the owner cannot produce the property, the third party has notice that another entity, including an artisan, may assert an interest in such property. A third

party who continues to deal with the property owner after learning the owner lacks possession of the property does so at his or her peril.

With respect to competing holders of liens or security interests in the same property, notice of the various liens and security interests allows each interested party to know where he or she falls in the pecking order. With respect to recorded interests, the general rule is that first in time has priority. However, artisan's liens are not recorded and invariably are created after security interests have been granted. Courts and legislatures generally recognize that a party who provides labor and materials to property enhances the value of the property. Therefore, the principles of natural justice and commercial necessity dictate that the entity who enhances the value of property should be entitled to payment for such services and may retain the property until receipt of payment therefor. *Gen. Motors Acceptance Corp. v. Colwell Diesel Serv. & Garage, Inc.*, 302 A.2d at 596-97. Indeed, the Nebraska statute at issue in this case provides exactly that. Artisan's lien laws are to be liberally construed to accomplish their equitable purpose of aiding materialmen and laborers to obtain compensation for materials used and services bestowed upon property of another which thereby enhances the value of such property. *Wiedenbeck-Dobelin Co. v. Mahoney*, 152 N.W. 479, 481 (Wis. 1915).

A lender who advances funds to acquire certain property or who loans money secured by existing property does so on the basis of the property at the time of the loan. The lender generally assumes the owner will maintain the property after the loan is made and often mandates such maintenance in the loan documentation. If the property later breaks or is in need of maintenance, the owner takes the property to an artisan for repair or maintenance. Such repair or maintenance enhances the value of the property, thus enhancing the value of the lender's collateral. The lender thus benefits from the repair. This was the case with the Equipment. The Lender took the security interest in the Equipment long before the Artisan performed the repairs to it. Immediately prior to the repairs, the Equipment was not working properly and

therefore its value was diminished. By performing the repairs, the Artisan enhanced the value of the Equipment, thus benefitting the Lender by increasing the value of its collateral. Recognizing the superiority of the Artisan's lien over the Lender's security interest is consistent with the policy underlying artisan lien law.

The bankruptcy court was troubled by the lack of certainty where an artisan is permitted to retain a lien without maintaining possession of the property. By requiring continuous possession in order to maintain an artisan's lien, the court limited uncertainty. While certainty is a valid goal in statutory interpretation, it should not come at the expense of the purpose behind the statute. Artisan's liens are designed to be equitable in nature and to protect the rights of artisans. If the artisan voluntarily surrenders possession, the artisan loses its lien. However, if the artisan loses possession through no action of his or her own, the artisan should not be punished. This is especially true where the Lender benefitted from the repairs to its collateral and its interests in the Equipment were in no way impaired when the Debtor took the Equipment from the Artisan nor when he later returned the Equipment to the Artisan.

The bankruptcy court relied on the *Glenn* decision in reaching its conclusion that continuous possession is required for an artisan's lien. In *Glenn*, the artisan returned the property to the owner upon receipt of a check for payment of the services. When the check was dishonored, the artisan requested the owner to return the property to the artisan, which the owner did. The *Glenn* court concluded that once the artisan relinquishes possession, the artisan's lien is lost and cannot be re-established by regaining possession. *Mack Fin. Corp. v. Peterbilt of Chattanooga, Inc. (In re Glenn)*, 20 B.R. at 100. However, the *Glenn* court expressly acknowledged that wrongfully obtaining possession of the property subject to the lien dispute might change the result. *Id.* at 101. The present situation, where the Debtor took the Equipment without permission, is such a situation. In *Glenn*, the artisan could have protected itself by demanding payment in collectible funds prior to release of the property. In

the present case, the Debtor took the Equipment from the Artisan without permission. The Artisan could not have prevented such wrongful action on the part of the Debtor.

The bankruptcy court was also concerned that allowing an artisan to regain its lien by regaining possession of property would give the Debtor control over the respective priorities between the Artisan and the Lender. The bankruptcy court cited the *Glenn* decision which in turn quoted from the dissent in *Thorp Commercial Corp. v. Mississippi Road Supply Co.* to support this policy argument. See *Mack Fin. Corp. v. Peterbilt of Chattanooga, Inc. (In re Glenn)*, 20 B.R. at 100-101, quoting *Thorp Commercial Corp. v. Mississippi Road Supply Co.*, 348 So. 2d at 1018 (Patterson, C.J., dissenting). We hold that the Artisan did not lose its lien when the Debtor took the Equipment without the Artisan's permission. Therefore, this policy argument does not impact our holding. Furthermore, the bankruptcy court's decision accomplished the very thing it set out to avoid – it allowed the Debtor to dictate the respective priorities between the Artisan and the Lender by permitting the Debtor's wrongful taking of the Equipment to determine the outcome of the priority dispute at the trial level.

Finally, the bankruptcy court determined that even if an artisan's lien does not require continuous possession and that such a lien can be revived when possession is regained, the automatic stay of Section 362 of the Bankruptcy Code prevented the Artisan from gaining possession of the Equipment or from perfecting a lien post-petition. See 11 U.S.C. § 362. Therefore, according to the bankruptcy court, without relief from the automatic stay the Artisan should not have been able to regain possession of the Equipment. While technically true, this statement is incomplete and ignores the entire picture.

On the Petition Date, the Artisan was in possession of the Equipment and thus had an artisan's lien with priority over the Lender's security interest. The petition date controls the allowance of claims in bankruptcy. See 11 U.S.C. § 502(b). Therefore,

with respect to the Debtor's bankruptcy case, the Artisan has a claim secured by an artisan's lien. Such a claim has priority over the Lender's secured claim under Nebraska law. Neb. Rev. Stat. U.C.C. § 9-333(b). Nothing in the Bankruptcy Code alters this result. Therefore, the Artisan's lien in the Equipment has priority over the Lender's security interest therein.

Furthermore, if all parties had played by the rules, the result would be the same as that reached in this opinion. As of the Petition Date, the Artisan had possession of the Equipment. If the Debtor wanted possession of the Equipment, he should have sought its turnover pursuant to Section 542 of the Bankruptcy Code. See 11 U.S.C. § 542. The Artisan, in turn, would no doubt have demanded adequate protection of its artisan's lien under Section 363 of the Bankruptcy Code prior to releasing possession of the Equipment. See 11 U.S.C. § 363(e). At such point in time, the parties might have agreed upon a resolution or the court would have fashioned a remedy that protected the Artisan's lien interest while allowing the Debtor to use the Equipment.[1] It is fundamentally unfair to punish the Artisan for a technical violation of the automatic stay which occurred as a result of the Debtor's actions, not the Artisan's actions. This is especially true where the Lender was not harmed by the Debtor's taking of the Equipment and its subsequent return to the Artisan, and may, in fact, have benefitted from the Debtor's use of the Equipment to plant and harvest a crop which may have produced funds to pay the Lender's claim.[2]

---

[1] The Debtor did not have the funds to satisfy the Artisan's lien in return for the Equipment. However, if made aware of the situation at the time, the Lender might have agreed to finance the Artisan's claim in exchange for the release of the Equipment. Alternatively, the Court could have entered an order preserving the Artisan's lien or providing another form of adequate protection under Section 361 of the Bankruptcy Code.

[2] The record lacks any evidence of harm or prejudice to the Lender by the Debtor's use of the Equipment during the 2005 growing season.

# CONCLUSION

The Artisan had an artisan's lien in the Equipment on the date the Debtor filed bankruptcy which had priority over the Lender's security interest under Nebraska law. The Artisan did not lose its artisan's lien nor its priority over the Lender's security interest when the Debtor took the Equipment from the Artisan's possession post-petition without authority. Accordingly, under these circumstances we REVERSE the bankruptcy court's order determining that the Lender's security interest in the Equipment takes priority over the Artisan's lien therein.

Kressel, Chief Judge, dissenting.

The majority has done an admirable job of reviewing the split of authority on the issue presented here, none of which admittedly is binding, and picking the line of cases which it feels provides the fair result for this case. I concede that the result reached is appealing. I think that in reaching it, the majority has departed from well established principles of interpretation and, as a result, has essentially engaged in the legislative process.

Federal courts are frequently called upon to interpret state statutes. Often, we are aided in that endeavor by decisions from the highest courts of the states involved. Unfortunately, that is not always true and this case falls into this latter unfortunate category. Like the majority, I was unable to find any Nebraska Supreme Court opinions interpreting the statute upon which this appeal turns. "When presented with a question of state law, upon which the state's highest court has not yet ruled, the onus falls to [the federal court] to determine what that court [the state supreme court] would do, were it presented with the question." *Lincoln Benefit Life Co. v. Edwards*, 243 F.3d 457, 465 (8th Cir. 2001) (quoting from *Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.*, 118 F.3d 1263, 1267-1268 (8th Cir. 1997).

12

While the Nebraska Supreme Court has not interpreted this statute, it does inform us that:

> In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

*Ferguson v. Union Pacific Railroad Co.*, 258 Neb. 78, 601 N.W.2d 907 (1999).

Neb. Rev. Stat. § 52-201, which is the statute upon which Bellamy's relies, deals with the situation where the artisan has parted with possession. Neb. Rev. Stat. § 52-202 deals with a situation of a person who repairs farm implements "in cases when he or she has parted with the possession of such property."I feel that the majority has engaged in legislative function by adding to § 52-201, the concept of continued perfection, notwithstanding loss of possession. While it is a rule that results in a fair outcome in this appeal, it may not be fair in other circumstances. I could imagine a situation, for example, where the debtor, after he had used equipment, sold it to a bona fide purchaser who is aware of the security interest in the equipment, but unaware of Bellamy's claim of an artisan's lien. The majority's holding would seem to indicate that the purchaser purchased the equipment subject to Bellamy's lien. Somehow, this seems unfair. I think the balancing of these sorts of issues and the proper solutions are best left to the Unicameral.

Since I think the Nebraska statute unequivocally provides for a first priority possessory lien only until possession is lost, I would hold that the bankruptcy court correctly held that Genoa National Bank's perfected security interest has priority over Bellamy's lien and would affirm.