THE BANK OF ILLINOIS, Plaintiff-Appellant, v. R. EDWARD DYE, Defendant-Appellee.

Fourth District   No. 4—87—0347

Opinion filed December 10, 1987.

John E. Maloney, of Maloney & Davis, of Urbana, for appellant.

Blake Weaver, of Finfrock & Weaver, of Urbana, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Plaintiff Bank of Illinois (bank) brought suit in replevin in the circuit court of Champaign County on May 9, 1986, seeking recovery of a 1985 Buick Riviera automobile. The parties agreed that defendant R. Edward Dye had possession of the vehicle, and plaintiff had a valid, perfected security interest in the vehicle on the basis of its "floor plan" financing to Gordon McGrath, d/b/a McGrath Auto Sales (McGrath). Defendant was purported to have purchased the vehicle from McGrath. Thus, the factual issue to be determined was whether defendant was a buyer in the ordinary course of business from Mc-

Grath. After a hearing on the merits, where the parties agreed that the court might consider a stipulation, testimony, pleadings, and affidavits, the court determined that plaintiff failed to sustain its burden of proof that defendant was not such a buyer. Accordingly, the court entered judgment in favor of defendant on April 23, 1987. Plaintiff has appealed. We reverse.

This case involves the interpretation of certain sections of the Uniform Commercial Code, designed to protect buyers of goods. Section 9—307(1) states:

> "(1) Except as provided in subsection (4), a buyer in the ordinary course of business, as defined in subsection (9) of Section 1—201, takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." (Ill. Rev. Stat. 1985, ch. 26, par. 9—307(1).)

A buyer in the ordinary course of business is defined as:

> "[A] person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind ***." Ill. Rev. Stat. 1985, ch. 26, par. 1—201(9).

The facts before the trial court indicated that, on July 16, 1984, plaintiff filed a financing statement with the office of the Secretary of State pursuant to section 9—302 of the Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 9—302). That statement covered, *inter alia*, "new and used motor vehicles" acquired by McGrath and authorized McGrath to sell, lease and consume its inventory in the ordinary course of business. In July 1985, McGrath pledged a 1985 Buick Riviera to plaintiff, delivered a duplicate Indiana certificate of title to the vehicle, and. received, in return, a $15,300 advance. The date the vehicle came into defendant's possession is in dispute, but, as stated previously, the parties agreed plaintiff's security interest was created, under the floor-plan financing, prior to defendant's possession.

Defendant testified in his deposition that he and Gordon McGrath had been close friends for over 30 years. He said that, from the "early 1980's" through 1985, he had bought and sold 8 or 10 cars through McGrath at a dealers' auction in Indianapolis. He stated that he gave McGrath a profit of $500 extra per sale for the first "couple" of cars so purchased, but he then discontinued that practice. He testified that he would usually select a car at the auction site and McGrath would bid on it. He said he frequently bought and sold vehicles at auction in this manner. Defendant stated that in 1982 or 1983, McGrath

suggested defendant could cut costs by allowing McGrath to keep the "paperwork," including certificates of title, and defendant could use a set of dealer's license plates. He admitted he had no proof of ownership of any of the vehicles, but he did not find that unusual, because he and Gordon "were very good friends." He further indicated that he was "sure" that Gordon McGrath handled the transactions involving the vehicles defendant bought and sold in a different manner than those for other people who purchased cars from the dealership.

With respect to the purchase of the 1985 Buick Riviera, defendant testified (1) the "purchase" was on June 12, 1985; (2) he paid for the vehicle with (a) the proceeds from the sale of a 1983 Buick (sold at auction by McGrath on behalf of defendant), (b) a check, dated June 13, 1985, for $3,500, and (c) cash of $2,400 paid on June 14, 1985; (3) he asked for and eventually received a certificate of title from McGrath; and (4) he paid the sales tax and applied for a new certificate of title in December 1985. Defendant admitted that in November 1985, he learned McGrath was having difficulties, and it was then that defendant wrote the check for the sales tax. He said he was not aware of the bank's interest in the vehicle until he received a letter from the bank in February or March of 1986.

The new certificate of title received by defendant, and the sales tax form, filed with the Illinois Department of Revenue and signed by both defendant and McGrath, both indicated a purchase date of December 17, 1985. An affidavit attached to the complaint indicated that the application for the new certificate of title was received by the Secretary of State's office on December 19, 1985. An affidavit from an officer of plaintiff indicated that plaintiff's agents checked the vehicles available at the McGrath place of business in August, September, October, November, and December 1985, and, on each occasion, the Buick Riviera in question was shown to one of them as part of McGrath's floor-plan inventory. The affidavit indicated that the inspections for the vehicles were usually made at a time known to McGrath, but the December inspection was apparently unannounced.

Defendant's wife's affidavit stated that, on various occasions, McGrath had asked her for the car so that he could show that type of vehicle to prospective purchasers. Her affidavit also stated she received possession of the 1985 Buick Riviera on June 12, 1985, and drove it daily except for several occasions when McGrath asked to use the vehicle to show other clients. Gordon McGrath's affidavit indicated that he had never informed defendant of the bank's security interest in the 1985 Buick Riviera.

In *American National Bank & Trust Co. v. Mar-K-Z Motors &*

*Leasing Co.* (1974), 57 Ill. 2d 29, 33, 309 N.E.2d 567, 569, the supreme court held that the question of whether one is a "buyer in ordinary course of business" is mostly one of fact for the trier of fact. Thus, the court's findings on that issue will not be disturbed unless they are contrary to the manifest weight of the evidence. We conclude the evidence here was insufficient to support the trial court's finding.

Plaintiff does not dispute that defendant was a *buyer*. Rather, it argues only that he was not a buyer in the "ordinary course of business."

■ Defendant maintains that the trial court's determination that the sale by McGrath to him was "in the ordinary course of business" is supported by the evidence that McGrath and defendant had engaged in other similar transactions. While that is of some significance, similar transactions between the parties is not enough to make a sale one in the ordinary course of business. Rather, as set forth in *Finance America Commercial Corp. v. Econo Coach, Inc.* (1983), 118 Ill. App. 3d 385, 390, 454 N.E.2d 1127, 1131, and *Herman v. First Farmers State Bank* (1979), 73 Ill. App. 3d 475, 479, 392 N.E.2d 344, 346, the crucial questions are whether the transaction between the buyer and seller was " *'customary in the business'* and whether the buyer was 'a *typical* buyer in an *ordinary* business transaction' with the seller." (Emphasis added.)

In *Wilson v. M & W Gear* (1982), 110 Ill. App. 3d 538, 541, 442 N.E.2d 670, 672, the court found sufficient evidence to support the trial court's determination that plaintiff was a buyer in the ordinary course of business, because (1) the seller was in the business of selling the particular merchandise involved, and (2) the sale in question was *"normal and typical* of the type of sales made in this trade." (Emphasis added.) Finally, in *Farmers State Bank v. Webel* (1983), 113 Ill. App. 3d 87, 446 N.E.2d 525, this court found that a sale of pigs, by an operator of a feeder operation to a farmer who left the pigs with the operator for fattening and subsequent sale, was in the ordinary course of business as a matter of law. There, however, the evidence showed that the operator had been proceeding in this manner for several years, and no evidence indicated that this type of operation was not common.

Here, the following incidents of the defendant's questioned purchase of a vehicle from McGrath indicate that the sale was not in "the ordinary course of business." The sale was made by the seller for the same price for which the seller had purchased it. No sum was added to the sales price to be used by the seller to make required payments under the Retailers' Occupation Tax Act. (Ill. Rev. Stat. 1985, ch. 120,

par. 440 *et seq.*) The seller never paid such a tax, and eventually, the defendant paid the tax in December 1985. No certificate of title was assigned to the defendant purchaser or requested until December 1985, when the purchaser purportedly learned for the first time that the seller was having difficulties. The purchaser was allowed to use the seller's dealer's license plates, thus participating in a fraud upon the State of Illinois, which was entitled to a registration fee for the vehicle. The buyer participated with the seller in sending a false document to the Secretary of State representing the date of the sale to have been in December 1985 rather than in June 1985. The vehicle was made available to the seller after the sale so that it was always present on the seller's floor when a check of the "floor-planned" vehicles was made by plaintiff including one occasion when an unannounced check was made by plaintiff.

■ Most of the foregoing unusual aspects of the transaction were such as to give an impression to the outside world and to the plaintiff that McGrath had not parted with his ownership of the automobile. In total, these factors are so lacking in being typical or customary as to negate any factual determination that the sale was in the ordinary course of business. Defendant points out that in *American National Bank & Trust Co. v. Mar-K-Z Motors & Leasing Co.* (1974), 57 Ill. 2d 29, 309 N.E.2d 567, and in *Finance America Commercial Corp. v. Econo Coach, Inc.* (1983), 118 Ill. App. 3d 385, 454 N.E.2d 1127, sales of vehicles by entities engaged primarily in renting vehicles were held to have been made in the ordinary course of business. However, there, the sellers were both shown to also have regularly sold their rental vehicles to the public when time to dispose of the vehicles arrived. Moreover, there, the conditions and surrounding circumstances of the sales were "ordinary" and "typical," and the question was whether the lessors were sellers in the ordinary course of business. Here, McGrath was clearly shown to be in the business of selling used cars. The question in issue was as to the nature of the particular sale, the conditions and circumstances of which were unusual.

We must conclude the circuit court's finding that the sale was in the ordinary course of business was contrary to the manifest weight of the evidence. Accordingly, we reverse and remand to the circuit court with directions to order the writ of replevin to issue.

Reversed and remanded with directions.

McCULLOUGH and SPITZ, JJ., concur.