OPINION
Defendant-Appellant Chrysler Finance Company ("CFC") appeals a decision of the Montgomery County Court of Common Pleas granting Fifth Third Bank of Western Ohio's motion for summary judgment and denying CFC's motion for summary judgment.
On December 31, 1998, Fifth Third Bank filed a complaint for replevin, seeking return of a 1997 Pontiac Grand Prix (hereinafter the "Vehicle") that CFC had had in its possession. CFC responded by filing an answer and counterclaim, denying the material allegations in the complaint, and asserting that it was entitled to the Vehicle's certificate of title because it had held a superior security interest in the Vehicle. Fifth Third Bank replied to the counterclaim, denying the allegations and offering the affirmative defense that it was the proper owner of the Vehicle.
On May 24, 1999, Fifth Third Bank filed its motion for summary judgment, arguing that it owned the Vehicle because it had purchased the Vehicle for value and in good faith. According to Fifth Third Bank, the Vehicle was not subject to any security interest of CFC under the Certificate of Title Act. CFC filed a motion for summary judgment on May 27, 1999, contending that it had a security interest in the Vehicle resulting from the filing of its UCC-1 financing statement. CFC also filed a cross-motion for summary judgment, claiming that Fifth Third Bank's allegations should be denied because the Vehicle had remained part of the dealership's inventory after the transaction.
On August 12, 1999, the magistrate filed a decision granting Fifth Third Bank's motion for summary judgment and denying CFC's motion for summary judgment. Fifth Third Bank was found to have purchased the Vehicle for value, in good faith, and in the ordinary course of business. Fifth Third Bank thus became the title owner, and at that point, CFC's security interest changed from an interest in the Vehicle to an interest in the proceeds of the sale.
On September 7, 1999, CFC filed objections to the magistrate's decision, and Fifth Third Bank responded thereafter. On December 15, 1999, the trial court adopted the magistrate's decision awarding the judgment to Fifth Third Bank. The trial court made the following findings of fact:
 On December 31, 1998, Fifth Third Bank filed a Complaint against CFC seeking replevin of [the Vehicle]. In July of 1998, the Vehicle was among a group of automobiles repossessed by CFC. In the instant action, both parties claim to possess a superior ownership interest in the Vehicle.
 George W. Hitchcock is the president, director and principal shareholder of Hitchcock Auto Group, Inc. (hereinafter "Hitchcock Auto"). Hitchcock Auto is an automobile dealership that sells new and used automobiles. CFC provided floor plan financing for Hitchcock Auto's inventory. On November 14, 1997, Mr. Hitchcock, as president of Hitchcock Auto, executed a promissory note to CFC which amended and renewed both a promissory note which was executed on February 10, 1994, and a Security and Master Credit Agreement executed on February 16, 1994. CFC, on February 10, 1997, filed a UCC-1 financing statement with the State of Ohio describing the collateral covered. These agreements gave CFC a security interest in the present and future inventory of Hitchcock Auto.
 On or about May 22, 1998, Mr. Hitchcock purchased the Vehicle from another automobile dealership. CFC provided floor plan financing for the Vehicle in the amount of $18,000. CFC understood the Vehicle to be part of Hitchcock Auto's inventory.
 On or about May 29, 1998, Mr. Hitchcock executed a Lease Agreement with Fifth Third Bank. In their normal course of business, Fifth Third Bank and Hitchcock Auto enter into lease transactions in which the bank purchases a vehicle from the dealership and then leases the vehicle to a consumer. In this case, Fifth Third Bank purchased the Vehicle from Hitchcock Auto and then leased it to Mr. Hitchcock. After obtaining the purchase price payment from Fifth Third Bank, Hitchcock Auto delivered the Vehicle's Certificate of Title to the bank and the title was then transferred into Fifth Third Bank's name. Fifth Third Bank currently possesses a valid Ohio Certificate of Title to the vehicle.
 Hitchcock Auto defaulted on its obligation to CFC. On or about July 13, 1998, CFC requested Mr. Hitchcock provide a list of the inventory of Hitchcock Auto. The Vehicle was on the requested list. CFC took possession of the Vehicle, pursuant to the Security Agreement, when Mr. Hitchcock voluntarily surrendered the inventory of Hitchcock Auto to CFC. Fifth Third Bank initiated this lawsuit as a replevin action to recover possession of the Vehicle titled in its name.
 (Doc. No. 45, pp. 1-2.) In its decision, the trial court affirmed the magistrate's decision and found that a "sale" did occur whereby Fifth Third Bank purchased the Vehicle from Hitchcock Auto for $19,500, and in return, Hitchcock Auto passed title to Fifth Third Bank. The trial court further found that Fifth Third Bank was a "buyer in the ordinary course of business," and thus took free of CFC's security interest under R.C. 1309.26(A).
CFC now appeals the trial court's decision, asserting two assignments of error, each with several sub-issues, for our review.
Preliminarily, we note that our review of a trial court's decision to grant summary judgment is de novo. Lorain Natl. Bank v. Saratoga Apts.
(1989), 61 Ohio App.3d 127, 129. A grant of summary judgment is only appropriate when there is: 1) no genuine issue of material fact; 2) the movant is entitled to judgment as a matter of law; and 3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. Civ.R. 56(C); Harless v.Willis Day Warehousing Co. (1979), 54 Ohio St.2d 64, 8 Ohio Op.3d 73. All competing inferences and evidence must be construed in favor of the non-moving party in deciding a motion for summary judgment. Civ.R. 56(E); Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 256.
 I. The trial court erred in holding that the transaction with the Bank constituted a "sale" of the vehicle[.]
 A. There was no "sale" of the Vehicle to Fifth Third[.]
 B. The trial court erred in failing to find that delivery is anecessary element of a "sale" under the UCC[.]
In the first two issues for our review, CFC contends that the trial court erred in its characterization of the nature of the transaction between Fifth Third Bank and Hitchcock Auto. According to CFC, there was no "sale" of the Vehicle by Hitchcock Auto to Fifth Third Bank because there was no "delivery" of the Vehicle. Instead, CFC argues, Fifth Third Bank was simply a buyer of chattel paper.
After reviewing the affidavits, interrogatories, and numerous documents which the trial court had before it, we find that Fifth Third Bank and Hitchcock Auto entered into a financial agreement under R.C.1302.01(A)(11), whereby Hitchcock Auto agreed to sell the Vehicle to Fifth Third Bank. Under R.C. 1302.01(A)(11), a "sale" is defined as "the passing of title from the seller to the buyer for a price." In this case, the record reflects that Hitchcock Auto passed title to the Vehicle to Fifth Third Bank in exchange for a payment of $19,500, the fair market value of the Vehicle. We find that this transaction satisfies all of the elements of a "sale."
CFC's next argument is that the trial court erred when it determined that a physical delivery of the Vehicle to Fifth Third Bank was not necessary under the definition of a "sale."
CFC asserts that under R.C. 1302.42(B), a sale requires both a transfer of title and a delivery. Conversely, Fifth Third Bank contends that the trial court was correct in its determination that R.C. 1302.42 does not apply in this case. According to Fifth Third Bank, Ohio's Certificate of Title statute, R.C. 4505.04, applies to Fifth Third Bank's rights as a bona fide purchaser. Under that statute, once title is transferred, the sale is completed and the new owner has a superior security interest. We agree.
In Hughes v. Al Green, Inc. (1981), 65 Ohio St.2d 110, 19 Ohio Op.3d 307, the Ohio Supreme Court held that the Certificate of Title Act was "intended to apply to litigation where the parties were rival claimants to title, i.e., ownership of the automobile; to contests between the alleged owner and lien claimaints; to litigation between the owner holding the valid certificate of title and one holding [the invalid] certificate of title; and to similar situations." Id. at 115-116, 19 Ohio Op.3d at 310, quoting Grogan v. Chrysler-Plymouth, Inc. v.Gottfried (1978), 59 Ohio App.2d 91, 94-95, 13 Ohio Op.3d 154, 156.
Similarly, in Smith v. Nationwide Mut. Ins. Co. (1988),37 Ohio St.3d 150, the court found that R.C. 4505.04 was "irrelevant to all issues of ownership except those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, and instruments evidencing title and ownership." Id. at 153. The Smith
court found that R.C. 1302.42(B) applies to situations pertaining to identifying the owner of a motor vehicle for insurance purposes, despite an apparent conflict with R.C. 4505.04. Id.
This case involves an ownership dispute between Fifth Third Bank, which has potential rights as a bona fide purchaser, and CFC as the lienholder. At issue are instruments evidencing title and ownership. Thus, based upon the above-mentioned caselaw, it is clear that the applicable analysis would be under R.C. 4505.04, and not R.C. 1302.42.
R.C. 4505.04 states, in pertinent part:
 (A) No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle, or delivered to the person a manufacturer's or importer's certificate for it; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration.
 (B) Subject to division (C) of this section, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:
 (1) By a certificate of title, a manufacturer's or importer's certificate, or a certified receipt of title cancellation to an exported motor vehicle issued in accordance with sections 4505.01 to 4505.21 of the Revised Code;
* * *
 (3) In an action by a secured party to enforce a security interest perfected under sections 1309.01 to 1309.50 of the Revised Code in accordance with division (A) of section 4505.13 of the Revised Code, by an instrument showing a valid security interest.
 In this instance, the record reflects that the Vehicle's certificate of title was delivered to Fifth Third Bank, in accordance with the statute. As CFC had no other instrument showing a valid security interest under this statute, this court recognizes Fifth Third Bank's title as ownership of the Vehicle and as a superior security interest. For these reasons, we find that the trial court did not err in its application of R.C. 4505.04 to the instant case.
 C. The trial court erred in considering only the Bank's intentfor the purposes of defining "delivery" and in basing his decisionon intent[.]
In its third issue, CFC argues that because Hitchcock had "no intention" of delivering the Vehicle out of Hitchcock Auto's inventory, no delivery occurred, and thus there was no "sale."
It is important to note that under R.C. 4505.04, the only requirement for a finding of ownership is the transfer of the certificate of title. There is no requirement that the goods be delivered. We therefore find it irrelevant that the Vehicle was not delivered to Fifth Third Bank.
From our review of the record and construing the evidence most strongly in CFC's favor, we conclude that the trial court properly found that no genuine issue of material fact existed and that reasonable minds could come but to one conclusion, that being adverse to CFC. The first assignment of error is not well-taken.
 II. The trial court erred in ruling that Ohio's Certificate of Title statute (Ohio Rev. Code § 4505.04 et seq.) overrides the Uniform Commercial Code provisions dealing with security interests in inventory (Ohio Rev. Code § 1309.01 et seq.) where a vehicle remains part of dealership inventory[.]
 A. The trial court erred in its definition of the "ordinary course ofbusiness" standard under the UCC.
CFC claims error in the trial court's decision finding that Fifth Third Bank was a "good faith purchaser [of the Vehicle] for value" and that the transaction between Fifth Third Bank and Hitchcock Auto was in the "ordinary course of business." In particular, CFC argues that these two requirements are separate and distinct, but in both instances, the intent of the seller must be examined as well as that of the buyer, which the trial court failed to do. CFC does not dispute that Fifth Third Bank acted in "good faith," however CFC claims that this is not dispositive of the second requirement that Fifth Third Bank be a "buyer in the ordinary course of business." According to CFC, the "nature" of the transaction was "non-ordinary," because the Vehicle was never delivered out of inventory and because the Vehicle had been "double-financed."
It is uncontested that CFC obtained a security interest in the Vehicle as part of Hitchcock Auto's inventory when it filed its UCC-1 financing statement, and per the "Security Agreement and Master Credit Agreement." According to the security agreement between Hitchcock Auto and CFC, CFC's security interest in the Vehicle terminated upon the sale of the Vehicle to Fifth Third Bank, as long as Fifth Third Bank was a "buyer in the ordinary course of business." At that point, CFC gained a security interest in the "proceeds" from the Vehicle's disposition, and Hitchcock Auto was to hold such proceeds in trust and remit such to CFC. The security agreement was written in accordance with R.C. 1309.26(A), which states, "A buyer in the ordinary course of business * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." Under R.C. 1301.01(I), a "buyer in the ordinary course of business" is one who "in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods, buys in ordinary course from a person in the business of selling goods of that kind[.]"
We note that CFC cites several cases outside this jurisdiction to support its contention that Fifth Third Bank was not a "buyer in the ordinary course of business" because of Hitchcock's ill-intent, and because the Vehicle was never delivered from Hitchcock Auto's inventory. Upon review of these cases, we do not agree with CFC's interpretation. For example, as CFC points out, in Martin Marietta Corp. v. New JerseyNatl. Bank (C.A.3, 1979), 612 F.2d 745, 753, the court held that one must make "some inquiry into the nature of the transaction." However, theMartin Marietta court also noted that, "The words cannot refer to the seller's status, for they then would be redundant of the phrase `in the business of selling goods of that kind.'" Id.
In most of the cases cited by CFC, the courts have held that an objective test must be applied to determine if there was a "buyer in the ordinary course of business," and the transaction must be viewed in light of a "general trade practices" standard. See, e.g., Foy v. First Natl.Bank (C.A.7, 1989), 868 F.2d 251; First Natl. Bank Trust Co. v. FordMotor Credit Co. (1982), 231 Kan. 431, 646 P.2d 1057; Bank of Illinoisv. Dye (1987), 163 Ill. App.3d 1018, 517 N.E.2d 38.
Ohio courts have generally focused upon the language in R.C. 1301.01(I), finding that if the seller is not "in the business of selling goods of that kind," the buyer was not a "buyer in the ordinary course of business." Textron Financial Corp. v. Median Ready-Mix, Inc. (Apr. 7, 1995), Richland App. No. 94CA40, unreported; Orix Credit Alliance, Inc.v. Tooling Connection, Inc. (Dec. 1, 1995), Paulding App. No. 11-95-8, unreported; Hale v. McIntire (Oct. 28, 1981), Warren App. No. 359, 361, 368, unreported; Universal Equip. Rental Co. v. Cleveland Stevedore Co.
(Nov. 7, 1974), Cuyahoga App. No. 32765, unreported.
Keeping this in mind, we now turn to CFC's argument. We agree with Fifth Third Bank and the trial court that CFC did not establish that this was an "extraordinary" situation. No evidence was produced that Fifth Third Bank had knowledge that would preclude its standing as a "buyer in the ordinary course of business." To the contrary, there was evidence that Hitchcock Auto, an automobile dealership that was in the business of selling new and used automobiles, had purchased the Vehicle from another automobile dealership. Hitchcock Auto entered into a lease agreement with Fifth Third Bank, a normal transaction which had occurred several times previously between Fifth Third Bank and Hitchcock Auto. The lease agreement provided, similar to the previous agreements, that Fifth Third Bank would purchase the Vehicle from Hitchcock Auto and then lease the Vehicle to a consumer. The record reflects that Fifth Third Bank did in fact purchase the Vehicle from Hitchcock Auto, and Hitchcock did in fact sign the lease agreement and remit his first payment to Fifth Third Bank at that time. We find that this transaction was completed in the "ordinary course of business" and that Fifth Third Bank was a "buyer in the ordinary course of business."
We find it important that Fifth Third Bank previously entered into similar transactions with Hitchcock Auto and that the prior transactions had been in the "ordinary course of business." As such, there was nothing to place Fifth Third Bank on notice that anything "extraordinary" was occurring, because the previous transactions had been "ordinary."
Furthermore, we find it irrelevant that the Vehicle remained part of Hitchcock Auto's inventory. Fifth Third Bank's ownership rights became effective under R.C. 4505.04(B)(1) upon the sale of the Vehicle and the transfer of title from Hitchcock Auto to Fifth Third Bank. Once title transferred, whether or not the Vehicle left Hitchcock Auto's lot did not alter Fifth Third Bank's rights.
CFC also places great emphasis on the transaction being "non-ordinary" because the consumer in this case happened to be Hitchcock, but there is no evidence in the record that it was "extraordinary" to lease a vehicle to the owner of a dealership. Finally, CFC argues that Fifth Third Bank cannot be a "buyer in the ordinary course of business" because Hitchcock Auto double-financed the Vehicle. We do not agree. The double-financing resulted from Hitchcock Auto's failure to remit the proceeds of the sale of the Vehicle to CFC, and not from Hitchcock leasing the Vehicle. We can find no evidence that Fifth Third Bank had any knowledge or control over Hitchcock or Hitchcock Auto's misconduct in their failure to remit the proceeds of the sale to CFC.
Accordingly, we do not find CFC's argument to be persuasive.
B. Ohio Rev. Code § 4505.04(B)(1) is inapplicable where thesubject goods remain part of inventory subject to a securityagreement[.]
CFC argues that title to the Vehicle was subject to CFC's perfected security interest. According to CFC, because the Vehicle remained part of Hitchcock Auto's inventory, no "sale" of the Vehicle occurred, and thus R.C. 4505.04(B)(3) and R.C. 4505.13 govern this transaction, not R.C.4505.04(B)(1).
As we stated supra, R.C. 4505.04 states:
 (B) Subject to division (C) of this section, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:
 (1) By a certificate of title, a manufacturer's or importer's certificate, or a certified receipt of title cancellation to an exported motor vehicle issued in accordance with sections 4505.01 to 4505.21 of the Ohio Revised Code;
* * *
 (3) In an action by a secured party to enforce a security interest perfected under sections 1309.01 to 1309.50 of the Revised Code in accordance with division (A) of section 4505.13 of the Revised Code, by an instrument showing a valid security interest.
R.C. 4505.13 states:
 (A)(1) Sections 1309.01 to 1309.50 and 1701.66 of the Revised Code do not permit or require the deposit, filing, or other record of a security interest covering a motor vehicle, except as provided in division (A)(2) of this section.
 (2) Sections 1309.01 to 1309.50 of the Revised Code apply to a security interest in a motor vehicle held as inventory, as defined in division (D) of section 1309.07 of the Revised Code, for sale by a dealer, as defined in division (J) of section 4517.01 of the Revised Code. The security interest has priority over creditors of the dealer as provided in sections 1309.01 to 1309.50 of the Revised Code without notation of the security interest on a certificate of title or without the retention of a manufacturer's or importer's certificate.
 Under R.C. 1309.26(A), a "buyer in the ordinary course of business * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." Under R.C. 1309.26(A), Fifth Third Bank was a "buyer in the ordinary course of business" and took ownership of the Vehicle free of any security interest of CFC. In fact, CFC's security interest terminated once Fifth Third Bank became a "buyer in the ordinary course of business." Thus, CFC had no valid security interest to enforce, and R.C. 4505.04(B)(3) and R.C. 4505.13(A) are inapplicable to the instant situation. Additionally, the plain meaning of R.C. 4505.13(A) indicates that the section is inapplicable to this situation, because this is not a situation where secured creditors are disputing over the same debtor.
We find that the trial court was correct in its analysis that because Fifth Third Bank was a "buyer in the ordinary course of business," it had a superior interest in the Vehicle, regardless of whether the situation was analyzed under R.C. 4505.04(B)(1) or (3). As such, the only interest in the Vehicle that should be recognized is Fifth Third Bank's interest, as stated on the title.
Accordingly, we do not find CFC's argument on this issue to be persuasive.
C. The trial court erred in finding that Ohio Rev. Code § 4505.04overrides Ohio Rev. Code § 1309.21 and § 4505.13 protection ofsecured creditors where a vehicle remains part of dealershipinventory[.]
In this portion of the assignment of error, CFC argues that as a floor-plan financier, the filing of its UCC-1 financing statement perfected its security interest in Hitchcock Auto's inventory. According to CFC, if it is not found to have a superior security interest, then the intent and plain meaning of R.C. 1309.21 and 4505.13 is "eviscerate[d]" by forcing secured parties to hold titles to all vehicles remaining in their inventory in order to protect their security interest.
R.C. 1309.21 addresses when financing statements must be filed to perfect security interests. For similar reasons upon which we based our decision in the previous issue, we do not agree. We have already determined that there was a sale of the Vehicle by Hitchcock Auto to Fifth Third Bank, and that a transfer of title did occur. Under the Certificate of Title statute, which is the correct applicable statute in this case, CFC's security interest in the Vehicle was terminated once the transfer of title had been completed.
We do not find that the intent and plain meaning of R.C. 1309.21 and R.C. 4505.13 is "eviscerated," because the purpose of R.C. 1309.26(A) is to protect bona fide purchasers such as Fifth Third Bank. Under R.C.1309.26(A), the rights of secured creditors have a subordinate standing to those rights of a bona fide purchaser who, in good faith and for value, has purchased goods from a seller who is "in the business" of selling goods of that kind. In this instance, although CFC must bear the loss of the Vehicle, CFC retained a security interest in the proceeds of the sale by filing its financing statement. Additionally, R.C. 1309.21
does not apply in this cause of action, because this is not an action between secured creditors of the same debtor in an effort to determine a superior security interest.
For the above-mentioned reasons, we do not find CFC's argument to be persuasive.
D. The trial court fundamentally mischaracterized the transactionsbetween Hitchcock Auto and Fifth Third and erred in the application ofthe law[.]
CFC again is arguing that the trial court erred in finding that there had been a "sale" of the Vehicle by Hitchcock Auto to Fifth Third Bank, and that Fifth Third Bank had "leased" the Vehicle to Hitchcock. CFC contends that automobile retail lenders such as Fifth Third Bank do not "buy" a vehicle in a finance lease transaction, but instead they decide whether to purchase a lease based upon the creditworthiness of a lessee.
Based upon the previous assignments of error, we overrule CFC's last issue.
We conclude that the trial court properly decided, construing the evidence most strongly in CFC's favor, that no genuine issue of material fact existed and that reasonable minds could come to but one conclusion, that being adverse to CFC. The second assignment of error is overruled.
Judgment affirmed.
GRADY, P.J. and BROGAN, J., concur.