PREMIER COMMUNITY BANK, Plaintiff-Appellant,

v.

Roger SCHUH, Defendant-Respondent,

SCHUH CATTLE COMPANY, LLC, Christopher R. Schuh and Christie R. Schuh, Defendants.

Court of Appeals

*No. 2009AP1722. Submitted on briefs April 4, 2010. —Decided July 27, 2010.*

2010 WI App 111

(Also reported in 789 N.W.2d 388.)

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. Premier Community Bank appeals an order granting summary judgment to Roger

Schuh in this lien priority dispute. Premier has a perfected security interest in Schuh's livestock. It claims its interest has priority over Schuh's livestock lien. We disagree and affirm.

## BACKGROUND

¶ 2. The following facts are undisputed. Schuh keeps and pastures others' livestock on his farm. Since 2005, Schuh has pastured cattle owned by Schuh Cattle Company, LLC (SCC), whose membership includes Schuh's son and daughter-in-law. In exchange, SCC agreed to pay Schuh $1.10 per day per animal. Although Schuh has demanded payment many times in the past, SCC has not paid him since March 1, 2006, and owes Schuh approximately $15,934.00.

¶ 3. In 2006, SCC used the livestock pastured on Schuh's farm as collateral for a loan from Premier. When SCC defaulted, Premier demanded the livestock from Schuh. Schuh refused, asserting a possessory lien in the cattle. Premier then filed suit to enforce its security interest. The circuit court granted Schuh's motion for summary judgment, concluding Schuh's lien is possessory and has priority over Premier's security interest.

## DISCUSSION

¶ 4. We review the circuit court's decision to grant summary judgment de novo. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–16, 401 N.W.2d 816 (1987). Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2); *Kersten*, 136 Wis. 2d at 315.

¶ 5. The circuit court determined Schuh holds a lien pursuant to Wis. Stat. § 779.43(3), which provides, "[E]very person pasturing or keeping . . . animals . . . shall have a lien thereon and may retain the possession thereof for the amount due for the keep, support . . . and care thereof until paid."[1] We agree the undisputed facts establish Schuh holds a statutory lien, and Premier concedes as much. Because Premier also holds a perfected security interest in the livestock, we must determine which lien receives priority.

¶ 6. Even though a security interest is perfected, the secured party's interest may still be subordinate to the claims of third parties holding statutory or common law liens like possessory liens. Wis. Stat. § 409.333(2). Subsection 409.333(1) defines a "possessory lien" as an interest, other than a security interest or an agricultural lien:

(a) Which secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business;

(b) Which is created by statute or rule of law in favor of the person; and

(c) Whose effectiveness depends on the person's possession of the goods.

¶ 7. Premier argues Schuh's lien is not possessory because the lien's effectiveness does not depend on Schuh's possession of the cattle. Instead, Premier contends Schuh has an agricultural lien, which does not

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

require possession of the cattle, *see* WIS. STAT. § 409.102(b)3., and does not receive priority over Premier's perfected security interest, *see* WIS. STAT. §§ 409.333(1), (2).[2]

¶ 8. Premier's argument requires that we examine the statute authorizing Schuh's lien, WIS. STAT. § 779.43(3), to determine whether the lien is contingent on possession. Interpretation of statutory language is a matter of law we review de novo. *Christensen v. Sullivan,* 2009 WI 87, ¶ 42, 320 Wis. 2d 76, 768 N.W.2d 798.

¶ 9. Premier reads WIS. STAT. § 779.43(3) as establishing a lien regardless of whether the lienholder retains possession of the animals. Premier reasons the statute uses the mandatory "shall" when referring to the existence of the lien, but the discretionary "may" when discussing retention of another's property.

¶ 10. However, read together, these clauses state a person pasturing animals "*shall* have a lien thereon and *may* retain the possession thereof . . . ." *Id.* (emphasis added). It is apparent the legislature intended to give individuals the option to retain possession of the animals without requiring them to do so.[3] Consequently, the statute creates a lien in favor of the possessor, and then allows the lienholder to elect between retaining or relinquishing possession. If the lienholder elects the former, the lien established by WIS. STAT. § 779.43(3) supplies legal justification for continued possession. If

---

[2] For the full definition of an agricultural lien, *see* WIS. STAT. § 409.102(b).

[3] As Schuh points out, an individual might decide to release the cattle for many reasons, including to avoid the additional expenses necessary to feed and care for the animals, or to preserve customer goodwill.

the lienholder elects to relinquish possession, the lien is no longer necessary to justify possession, and the lien is lost. Accordingly, we conclude a lien under § 779.43(3) is contingent on possession and is a "possessory lien" as defined by WIS. STAT. § 409.333(1).

¶ 11. Despite the plain meaning of WIS. STAT. § 779.43(3), Premier contends *M & I W. State Bank v. Wilson*, 172 Wis. 2d 357, 493 N.W.2d 387 (Ct. App. 1992), compels us to accept Premier's interpretation. In *Wilson*, we were presented with a priority dispute between a bank, which held a secured interest in Wilson's truck, and a mechanic whom Wilson owed for numerous repairs to the vehicle. *Id.* at 359. After each repair, the mechanic released the vehicle to Wilson so she could earn money to pay for the service. *Id.* We determined this conditional release did not constitute a waiver of the mechanic's lien under WIS. STAT. § 779.41(1) (1989–1990), which provided garage owners "may retain possession of the personal property until the charges are paid." Accordingly, we held the mechanic's lien had priority over the bank's secured interest.

¶ 12. Premier correctly points out that the statute governing mechanic's liens in *Wilson* and the statute governing Schuh's lien share similar discretionary language regarding possession. Premier further reasons that since the mechanic's lien in *Wilson* was not defeated by conditional release of the vehicle, a lien under WIS. STAT. § 779.43(3) is not contingent on possession. This argument ignores a critical point in *Wilson*, which is that the mechanic had regained possession of the vehicle by the time the bank sought to levy upon it. *Wilson*, 172 Wis. 2d at 359. Thus, we held, "Upon the resumption of possession, the lien is revived and retains its priority as before the release . . . ." *Id.* at 365. Con-

trary to Premier's assertion, *Wilson* suggests possession is critical to the existence of a mechanic's lien and, by extension, a lien under § 779.43(3).

¶ 13. Wisconsin Bankers Association, appearing as amicus curiae, argues that any statutory lien not clearly requiring a lienholder to retain possession of the goods should be deemed an agricultural lien, which must be perfected by filing a financial statement. *See* WIS. STAT. § 409.310(1). To hold otherwise, it claims, would reintroduce "the specter of secret liens to agricultural lending" and drive up the cost of loans. We rejected a similar argument in *Wilson*, noting statutes which could subordinate the creditor's interest are known risks, and a creditor "has the opportunity to protect itself by writing into the security agreement that all subsequent repairs must be approved by the creditor." *Wilson*, 172 Wis. 2d at 364. Similarly, lenders may protect themselves by placing contractual restrictions on the movement of cattle.

¶ 14. Premier next argues competing inferences may be drawn from the undisputed facts, making summary judgment inappropriate. In deciding a motion for summary judgment, the court examines the record to determine whether there are disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial. *Trinity Evangelical Lutheran Church v. Tower Ins. Co.*, 2003 WI 46, ¶ 32, 261 Wis. 2d 333, 661 N.W.2d 789. "The inferences to be drawn from the underlying facts contained in the moving party's material should be viewed in the light most favorable to the party opposing the motion, and doubts as to the existence of a genuine issue of material

fact are resolved against the moving party." *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶ 23, 241 Wis. 2d 804, 623 N.W.2d 751.

¶ 15. Premier claims a factual dispute exists regarding whether Schuh pastured SCC's cattle in the ordinary course of business as required by Wis. Stat. § 409.333(1). Grounding its argument solely in the fact that the transaction involved family members, Premier cites cases from foreign jurisdictions purportedly establishing that a special relationship among the parties can render a transaction outside the ordinary course of business. *See Merchants & Planters Bank & Trust Co. of Arkadelphia v. Phoenix Hous. Sys.*, 729 S.W.2d 433 (Ark. Ct. App. 1987); *Bank of Ill. v. Dye*, 517 N.E.2d 38 (Ill. Ct. App. 1987). In each of those cases the court cited many factors for its conclusion that the transaction was not in the ordinary course of business. *See Merchants*, 729 S.W.2d at 436; *Dye*, 517 N.E.2d at 40–41. Moreover, although the *Dye* court noted that the disputed transaction occurred between close friends, at no point did the court use that fact to support its conclusion. *See Dye*, 517 N.E.2d at 39–41. Thus, Premier cites no authority indicating a father cannot have an armslength transaction with a company whose membership includes his son and daughter-in-law.[4]

¶ 16. The undisputed facts, and reasonable inferences from those facts, establish the transaction in this case occurred in the ordinary course of business. Schuh is in the business of pasturing cattle, and does not do so

---

[4] In its reply brief, Premier also cites a decision of the United States Court of Appeals for the Ninth Circuit applying the United States Bankruptcy Code, and a decision of the United States Tax Court. Both areas of the law are highly specialized and the decisions are therefore of limited persuasive value for the general rules Premier draws from them.

exclusively for SCC. Schuh and SCC agreed on the rate SCC would be charged, and there is no evidence that rate is more favorable than that charged to other individuals or groups. Although Premier emphasizes that Schuh allowed the debt to remain unpaid for years, Schuh repeatedly asked SCC for payment, and did so more frequently as the debt mounted. Other than his obvious right to legal recourse, Premier does not explain what Schuh could have done besides keep the cattle, consistent with his lien.

*By the Court.*—Order affirmed.